# Wytheville.

## NORFOLK AND WESTERN RAILWAY COMPANY v. MARY J. HARDY, ADMINISTRATRIX OF JOHN E. HARDY, DECEASED.

June 13, 1929.

The opinion states the case.

*W. Moncure Gravatt*, for the plaintiff in error.

*Ozlin & Ozlin, Geo. E. Allen* and *H. H. Watson*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

On the afternoon of January 26, 1927, John E. Hardy, driving alone in a Ford coupe along the public highway, from Petersburg to Blackstone, was killed by a train of the Norfolk and Western Railway Company at a crossing near Blackstone, in Nottoway county. His administratrix filed a motion against the railway company for the recovery of damages for his death.

The notice averred the negligence of the company to be the failure to sound the crossing signals required by statute.

There was a jury trial, a verdict for $8,000.00 damages, upon which the trial court entered final judgment, and the case is here for review.

The record is voluminous, but the facts are few, and legal questions like those raised, with one possible exception, have been heretofore repeatedly discussed and determined in similar cases.

■ (a) One of the assignments of error arises upon the motion of the defendant to set aside the verdict because of after-discovered evidence as to the defective hearing of a witness for the plaintiff, Miss Louise Love.

This witness had testified that she was a passenger on the train and was preparing to leave it at Blackstone, and that just before and at the time of the accident she was listening for train whistle to sound for the Blackstone station, and that the crossing signals were not sounded. This ground for the motion for a new trial is based upon the fact that while it appeared at the trial she was somewhat deaf, she then testified that she was not deaf at the time of the accident, but that her deafness had been thereafter caused by an operation on her nose in the summer of 1927; that the defendant had no previous means of knowing that she was deaf, or that she claimed that her deafness was caused by an operation; and that this information was all supplied to the defendant during the trial. It is then alleged that having learned that Dr. Wellford, of Richmond, performed the operation, and that he would testify that she was deaf when she came to him in June, 1927; that he operated to relieve this deafness, which was of a catarrhal nature, and a disease of a slow and steady growth, and therefore she must necessarily have been deaf at the time of the accident. Dr. Wellford was introduced to support these contentions, but he testified quite unequivocally that in his opinion, notwithstanding her partial deafness at the time of

the occurrence, she could have heard these signals had they been given. Certainly then this assignment is not well taken.

(b) Another error assigned as a ground for the motion to set aside the verdict, was because two jurors, Robertson and Dyson, had once been employed by the railroad company, but had left their work and become strikers, and were not impartial jurors.

It was shown that these two jurors had been employed by the company when they, with the mechanics and clerks, left their work on a strike in 1922, six years before the trial of this case. This objection to these jurors was neither raised nor suggested until after the verdict, though the facts now relied on as to one of the jurors became known to the defendant's attorney after the jury retired but several hours before the verdict was returned. As to the other juror, the fact was not known until after the verdict. The testimony of these two jurors was taken, and it was shown that they both voted for the smallest amount of damages suggested by any of the jurors while considering of their verdict. Six of them favored a verdict for $10,000.00, while some others favored amounts in excess of $8,-000.00. Both of these jurors also disclaimed any bias or prejudice against the company.

The question is elaborately argued, and many precedents are cited. In our opinion this is much labor lost, because the question is determined by statute, Code, 1919, section 6002.

That reads: "No irregularity in any writ of *venire facias*, or in the drawing, summoning, returning, or empaneling of jurors shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection specifically pointing out such irregularities was made

before the swearing of the jury; and no judgment shall be arrested or reversed for the failure of the record to show that there was a *venire facias*, unless made a ground of exception in the trial court before the jury is sworn."

It is quite unnecessary to belabor this question. The statute, fairly construed, means that when jurors have been sworn and empaneled to try a case, without objection, and the case is then tried and submitted on the merits, it is too late after verdict to object to any particular juror, unless it is affirmatively shown that the party objecting was injured by the alleged irregularity. In this case it is clearly shown that the defendant company was not prejudiced. It is manifest that the circumstance does not justify reversal in this case; that the statute closes the discussion and is decisive. *Bristow* v. *Commonwealth*, 15 Gratt. (56 Va.) 648; *Suffolk* v. *Parker*, 79 Va. 600, 52 Am. Rep. 640; *Vawter* v. *Commonwealth*, 87 Va. 245, 12 S. E. 339; *Allen* v. *Commonwealth*, 122 Va. 846, 94 S. E. 783.

(c) Another ground for the motion to set aside the verdict was because no order had been entered by the court in summoning the special jury which tried the case. The pertinent part of the statute, Code, 1919, section 6005, reads: "*How special juries are formed.*—Any court in a case where a jury is required may allow a special jury, which shall be formed in the following manner: The court shall order such persons to be summoned as it shall designate for the purpose, and from those summoned a panel of twenty qualified jurors, free from just exception, shall be made, from which sixteen shall be chosen by lot." The rest of the section is immaterial in this case.

It is shown that no order was entered, but it is also shown that the judge prepared a list of the names of

twenty persons to be summoned for the special jury, and that the twelve of them ultimately selected to try the case were chosen from that list according to law. When the case was called, instead of twenty, there were only nineteen present, and it was agreed by the attorney for the defendant that no question would be raised as to this, but that each side would strike off two from a panel of sixteen. This was done in open court.

The trial court thus expresses the fact: "There was no order entered for a special jury, but what did occur was that twenty men were summoned, nineteen appeared in court, and by agreement the number was reduced to sixteen, and from that sixteen each side struck off two."

In *Poindexter's Case*, 33 Gratt. (74 Va.) 766, it appeared that two of the jurors who served in the case had not paid their capitation taxes and so, not being entitled to vote, were not competent to serve. There was a motion to set aside the verdict on this ground. In this connection, Moncure, P., said: "The court is of opinion that the said objection was made too late, and was then properly overruled. The accused accepted these two jurors, had the benefit of having them on the jury which tried him, and being disappointed by the verdict of guilty, which was found against him, he then, for the first time, objected that these two jurors were incompetent as such because they had not paid their capitation tax for 1878, the year preceding that in which the trial took place. The proper time for objection to the said jurors was before they were sworn on the jury. * * * If he did not know whether they had paid their capitation taxes of the preceding year, and cared about availing himself of any such ground of objection, if it existed, he could

easily have inquired into it of them or otherwise before they were sworn and then acted accordingly. But he made no such inquiry; doubtless because he cared nothing about it, or preferred to have the benefit of the objection, if he could make it, in the event of a verdict being found against him."

So, in this case, if the attorney for the defendant company had then deemed an order essential for the protection of any of the rights of his client, he could and should have satisfied himself of this fact and objected before the jury was sworn.

In *City of Charlottesville* v. *Failes*, 103 Va. 57, 48 S. E. 511, there was a special jury. The court curtly disposed of the question thus: "The second assignment of error involves the regularity of the manner of summoning and constituting the special jury which tried the case. The exception was not taken until after verdict, and, it not appearing that the city was injured by the irregularity, the objection was properly overruled." Citing the statute which is now Code, 1919, section 6002, *supra.*

We think the trial court committed no error in overruling this objection.

(d) There is another assignment of error which is much more serious in character. It is clearly shown as well by the evidence of the plaintiff as by that of the defendant, that the injury occurred in the daytime. Mr. Hardy was driving along the road, which for several hundred feet ran substantially parallel with the railroad until it reached a point near the crossing, when it turned at an angle of forty degrees and went across the tracks. For a space of fifty feet before reaching the track, one on the highway had a clear view of trains approaching the crossing. . At that point a train could have been seen 550 feet to the east, the direction

from which this train was coming, and when within twenty feet of the crossing, one could see 1,200 or 1,300 feet. Mr. Hardy was driving a Ford coupe, was familiar with the crossing, was driving slowly, not to exceed four or five miles an hour. He came almost to a stop when he was between fifteen and twenty feet from the track. There was a signal post and crossing sign, but the testimony shows, and the photographs of the crossing and its approaches demonstrate, that they could not have obstructed his view of the on-coming train had he looked. While the railroad double track was just below the surface of the adjacent land, the shallow cut was not deep enough to obscure his vision of the approaching train. West of the crossing there were other trains standing still, one of them a wrecking train, there for the purpose of removing an obstruction caused by a derailed car. The nearest car of these trains so standing still was more than 750 feet west of the crossing, and the engines still further away. These trains were not a menace, and there was nothing else having the slightest tendency to confuse or mislead.

These being the circumstances, the court was asked to give this instruction: "The court instructs the jury that under the evidence as it appears in this case the plaintiff was guilty of contributory negligence in going on the crossing at the time and in the manner he did."

For the plaintiff it is contended that this instruction invades the province of the jury, among other reasons, because it violates the spirit, if not the letter, of Code, 1919, section 6003, prohibiting peremptory instructions directing what verdict a jury should render.

The sufficient response to this contention is that this instruction does not direct a verdict. The question thereby raised was whether or not the contributory

negligence of the plaintiff was apparent from the evidence, or whether, under the testimony, that was a question about which fairminded men might fairly differ.

A late expression on the subject is by Holt, J., in the case of *Etheridge* v. *Norfolk Southern R. Co.*, 143 Va. 789, 129 S. E. 680. He quotes this from *Headley et als.* v. *Denver & R. G. R. Co.*, 60 Colo. 500, 154 Pac. 731: "Nevertheless, such a question, in a particular case, may become one of law and thus come within the province of the court, so that a particular verdict may and should be directed. Where the facts are such that reasonable men of fair intelligence may draw different conclusions, the question of contributory negligence must be submitted to the jury, for the finding is then of fact. But if it is clear that only one reasonable inference can be drawn from the facts, and the course which prudence dictates be definitely discerned, the finding thereon is of law, not of fact, and it devolves upon the court to settle the matter."

Judge Harrison discussed a similar question in *N. & W. Ry. Co.* v. *Strickler*, 118 Va. 153, 86 S. E. 824. He there says this: "We are further of opinion that if the negligence of the defendant were conceded, the plaintiff would not be entitled to recover, because he was guilty of negligence proximately contributing to his injuries. The evidence shows that from a point on the highway thirty feet from the crossing, and until the same was reached, the track in the direction from which the motor truck was coming was straight and level, affording an unobstructed view of the rails and ties for a distance of 1,500 feet. The plaintiff says that his car was a light 'Metz' machine, which cost $423.00, and that in approaching the crossing at six or seven miles an hour the car could have been stopped in three

or four feet; that in approaching the crossing he listened and kept a lookout all he knew how in the direction from which the motor truck came; and that he did not see or hear the same until it was within twenty-five yards of his car, which was then nearly across the track. The plaintiff was asked: 'If you can see east from there and what was moving towards you when you looked, why didn't you see the truck?' His reply was: 'Simply because it wasn't there, is the only reason I can give.'

"It is impossible that the plaintiff could have traversed the thirty feet, listening and looking, over a clear track of 1,500 feet, and not have seen an approaching motor truck until it was too near for him to stop short of the track, or for the truck to avoid the collision. He says that his vision was good. That he looked, as claimed, continuously while passing over the thirty feet, and did not see the motor truck approaching anywhere within the distance of 1,500 feet, is an incredible statement that cannot be accepted. He could have stopped within three or four feet of the track and avoided the accident. It was his duty to look and listen for railroad vehicles. Upon the plaintiff's own statement, the conclusion is unavoidable that he failed to look at any point within thirty feet of the track, or, if he looked, that he failed to heed the approach of the motor truck, which he must necessarily have seen. * * * That the plaintiff both looked and listened so as to make his looking and listening effective, and neither saw nor heard the rapidly approaching motor at any point within the clear unobstructed view of 1,500 feet, is wholly incredible.

"This court has repeatedly declared that courts are not required to believe that which is contrary to human experience and the laws of nature, or which

they judicially know to be incredible. Though the case be heard as upon a demurrer to the evidence, the court will not stultify itself by allowing a verdict to stand, although there may be evidence tending to support it, when the physical facts demonstrate such evidence to be untrue, and the verdict to be unjust and unsupported in law and in fact." *C. & O. Ry. Co. v. Anderson*, 93 Va. 650, 25 S. E. 947; *Harvey v. Commonwealth*, 103 Va. [850] 860, 49 S. E. [481] 480; *N. & W. Ry. Co. v. Crowe's Adm'r*, 110 Va. 798, 67 S. E. 518; *Pennsylvania R. Co. v. Jenkins*, 119 Va. 186, 89 S. E. 97; *Southern Ry. Co. v. Mason*, 119 Va. 256, 89 S. E. 229; *Virginia & S. W. Ry. Co. v. Skinner, and Same v. Harris*, 119 Va. 843, 89 S. E. 888; *Hancock v. N. & W. Ry. Co.*, 149 Va. 829, 141 S. E. 849.

There are many other cases illustrating the same proposition, the latest of which is *Southern Ry. Co. and C. & O. Ry. Co. v. Davis' Adm'r*, decided March 21, 1929, 152 Va. 548, 147 S. E. 228. In that case it is said: "It cannot be denied that the failure of a traveler upon a highway to look (and listen) before going upon a railroad track, when there is no obstructed view, and that, having such unobstructed view, the going upon a railroad track from a safe place immediately in front of a moving train which is then so close as to make a collision inevitable, is negligence *per se*." *N. & W. Ry. Co. v. Sink*, 118 Va. 439, 87 S. E. 740; *Washington & Old Dom. Ry. Co. v. Zell's Adm'r*, 118 Va. 755, 88 S. E. 309; *Norfolk Southern R. Co. v. Smith*, 122 Va. 302, 94 S. E. 789; *Canody v. Norfolk & Western Ry. Co.*, 129 Va. 56, 105 S. E. 585; *Washington & Old Dom. Ry. Co. v. Thompson*, 136 Va. 597, 118 S. E. 76; *Etheridge v. Norfolk Southern R. Co.*, 143 Va. 789, 129 S. E. 660.

In such cases the conclusion which has been so

frequently stated by the courts necessarily follows. A traveler who is injured under such circumstances either failed to look, or both looked and saw the train near and rapidly approaching but nevertheless disregarded the danger and attempted to cross the track immediately in front of it when it was so near as to make the peril of such a course manifest. In either event his contributory negligence is apparent.

A late case from the Supreme Court of the United States is *Baltimore & O. R. Co.* v. *Goodman*, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 168, 56 A. L. R. 645.

The instruction was proper under the facts of this case, the court erred in refusing to give it, and the judgment must therefore be reversed.

The contributory negligence of the plaintiff, however, under the existing Virginia statute (Code, 1919, section 3959), is not an absolute bar to the action, because that statute provides that: "If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such traveler, nor for an injury to or destruction of property in his charge, where such injury, death or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively, but the failure of the traveler to exercise such care may be considered in mitigation of damages."

This statute applies in cases in which the railway company has failed to give the signals required by law when a railway train approaches a grade crossing. In this case that question is concluded. There was a conflict in the testimony as to whether or not these

signals were given. The testimony introduced by the plaintiff is sufficient to support the conclusion of the jury that they were not given, and that question should not be reopened in this case.

This statute was thus construed in *N. & W. Ry. Co. v. Simmons*, 127 Va. 427, 103 S. E. 611: "This section, then, measureably relieves the traveler of the consequences of his own contributory negligence, where the operators of trains fail to give statutory signals. Instead of excluding the plaintiff from any recovery and making his contributory negligence a complete bar to the action, it, if the other requisites therefor exist, allows a recovery, requiring the jury, however, to consider the contributory negligence of the plaintiff in mitigation of damages, thus changing the law as declared in *Atl. & D. Ry. Co.* v. *Reiger, supra* [95 Va. 427, 28 S. E. 593], and *Simons* v. *Southern Ry. Co., supra* [96 Va. 155, 31 S. E. 7]."

Chichester, J., in *Southern Ry. Co.* v. *Johnson*, 151 Va. 345, 146 S. E. 363, states the limitation upon the right to recover in such cases thus: "If the failure to give the signals in any way contributed to the accident, then, however grossly negligent the traveler was, he is entitled, under section 3959, to recover, subject to mitigation of his damages in proportion to his negligence."

It is obvious that the statute imposes upon the jury the duty of considering and appraising the contributory negligence of the plaintiff. That which is imposed as a duty is mandatory and cannot be treated as permissive.

The doctrine of contributory negligence is not abolished, but its penalty is ameliorated or mitigated. If the contributory negligence of the plaintiff appears, that fact cannot be ignored.

In this case, the veil of secrecy which usually envelopes the jury room has been slightly lifted. Upon the motion for a new trial three of the jurrors testified as to occurrences in the jury room. It appears therefrom that this jury either disregarded or overlooked the contributory negligence of the plaintiff's intestate. They determined, without hesitation, that the defendant had been negligent and was liable in the action, and the testimony being in conflict, to determine this conflict was their duty and function, but they misunderstood, ignored or disobeyed some of the instructions which were given by the court as to contributory negligence of Mr. Hardy, and failed to attach any weight to the uncontradicted evidence which demonstrated his negligence. These revelations of these jurors show the necessity for such an instruction as that which was offered and refused in this case, unless the admitted standards of justice are to be discarded. It was the duty of this jury, under the evidence in this case, under the instructions which were given, after having decided that the defendant was negligent and therefore liable for some damages, to consider the apportionment of those damages as between the plaintiff and the company. Both being at fault, the total damages should be reduced—mitigated.

The refusal of the court, under the facts of this case, to grant this instruction, therefore necessitates a reversal of the judgment and the remanding of the case to the trial court for the purpose of assessing and apportioning the damages. Before the enactment of the statute, such contributory negligence of a plaintiff as is here shown would have barred the action. Since this statute, in cases in which it applies, this is changed. and while there may be a recovery, it is not only the

duty of the jury to determine the damages, but also to mitigate and apportion the amount. The judgment will, therefore, be reversed and the case remanded for that purpose.

*Reversed and remanded.*