# Richmond

## SOUTHERN RAILWAY COMPANY V. SAMUEL G. WHETZEL, ADMINISTRATOR, ETC.

### January 12, 1933.

### Present, All the Justices.

798

The opinion states the case.

*Thomas B. Gay, John S. Barbour* and *F. S. McCandlish,* for the plaintiff in error.

*Robert A. Hutchison* and *Thomas E. Didlake,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Grant G. Whetzel, a boy fourteen years of age, was killed when an automobile in which he was riding as a passenger was struck at a grade crossing by an engine of the Southern Railway Company. His administrator recovered a verdict and judgment in the trial court.

The declaration alleged two acts of negligence: (1) Failure to sound the statutory signals. (2) Improper in-

stallation and maintenance of the automatic electric signals at the grade crossing. The defendant plead the general issue and contributory negligence.

The first error assigned is to the action of the court in refusing to strike the plaintiff's evidence and later to set aside the verdict. Under this assignment the defendant contends (1) that the evidence tending to show that the statutory signals were not given is entirely negative; (2) that even if these signals were not given, the plaintiff failed to establish a causal connection between such failure and the collision; (3) that the contributory negligence of Grant Whetzel and the driver of the car was the sole proximate cause of the accident; (4) that there was not sufficient evidence to establish negligence in the operation of the automatic signals. We will discuss these contentions in the order named.

(1) Sunday afternoon, March 10, 1929, Grant Whetzel, his brother Frank, Hampton Kurlin and Amos Smith were riding in a Chevrolet touring car, with the curtains down, and as they attempted to pass over a grade crossing at Bristow, Prince William county, the automobile was struck by a southbound Southern Railway freight train, resulting in the death of the four boys. At this point there are two main line tracks and a spur. The highway, extending east and west, crosses the right of way almost at right angles. When the automobile, traveling west, neared the crossing Grant was on the side farthest from the approaching train.

Employees of the railway company in charge of the train, and others, testified that the statutory signals were given. There is a railroad bridge spanning Broad Run 1,900 feet north of the crossing. Three witnesses, who were standing (or walking slowly) north of this bridge and about 100 yards from the right of way, testified that they had an unobstructed view of the train from the bridge to the station, and observed it as it crossed the bridge and approached the station; that before it reached the bridge it sounded its whistle but gave no further signal before reaching the cross-

ing. The testimony of two of these witnesses is positive. Virgil Petty testified as follows:

"Q. What signals were given by the engine after it passed the bridge going to Bristow?

"A. I didn't hear any.

"Q. Had you withdrawn your attention from the train or were you still watching the train?

"A. Still watching the train."

On cross-examination he stated:

"Q. You want the jury to understand there was no bell ringing or you just don't remember having heard the bell ring?

"A. There wasn't any ringing.

"Q. How much fuss was that train making?

"A. It wasn't making so terrible much.

"Q. Running along easy?

"A. It wasn't kicking up so very much fuss."

Another witness, E. W. Shumaker, Jr., testified:

"Q. What signals did the train give, if any, after the engine had passed the bridge between there and Bristow?

"A. It didn't give any."

On cross-examination he testified.

"Q. If you were so uncertain about the time, how is it now you can be so certain about blowing whistles?

"A. I heard it. I heard it blow this side of the bridge but I didn't hear it blow the other side. I would have heard it if it had blowed."

██ In view of this evidence, the rule that negative testimony has no probative value as against positive, affirmative evidence by credible witnesses is not applicable, and the decision in this case on this point is not influenced by the cases of *Norfolk & W. Ry. Co.* v. *Eley,* 157 Va. 568, 162 S. E. 3; *Cooper* v. *So. Ry. Co.,* 153 Va. 93, 149 S. E. 444; *White* v. *So. Ry. Co.,* 151 Va. 302, 144 S. E 424; and other like cases cited by defendant.

(2) The second contention of defendant is that even

if the signals were not given, the plaintiff failed to establish causal connection between such failure and the accident.

The act requiring certain signals to be given by trainmen approaching a highway crossing at grade first appeared in the Acts of 1893-94, pages 827, 828. This act was construed in *Atlantic & D. Ry. Co.* v. *Reiger,* 95 Va. 418, 28 S. E. 590, 593. In the opinion in that case Judge Buchanan said:

"The object of the statute, as stated in its title, was to protect human life; and, as the injury to the plaintiff was especially such a one as the sounding of the whistle was intended to prevent, *some presumption arises that the injury was caused by the neglect,* unless the plaintiff's own fault was manifest. Cooley, Torts (2d ed.) 799; Shear. & R. Neg., section 469; 3 Elliott, R. R., section 1155. But such negligence of the defendant does not entitle the plaintiff to recover, unless it was the cause of his injury. Whether it was or not was to be determined from all the facts and circumstances of the case. Although the whistle did not blow as required, yet if the plaintiff knew, or by the exercise of ordinary care ought to have known, that the locomotive was approaching, in time to have avoided the injury, he was not entitled to recover." (Italics supplied.)

The above opinion was published December 2, 1897. On June 23, 1898, in *Simons' Adm'r* v. *So. Ry. Co.,* 96 Va. 152, 31 S. E. 7, 8, Judge Keith, in construing the same act, said:

"It is true that proof of the failure on the part of the railway company to give the signal required by statute, and proof of injury to the plaintiff, are not of themselves sufficient to support a verdict against the company. On the other hand, when it is said by courts and text-books that a causal connection must be shown between the breach of duty or act of negligence and the injury, nothing more can be meant than that the evidence must tend to establish such a relation between them, as, according to the ordinary experience of mankind, warrants the conclusion that the

injury would not have happened had not the negligence occurred."

It appears that the later case overruled, certainly by implication, that part of the opinion in the *Reiger Case* which held that some presumption of causal connection arose from the failure to give the signals and the injury. So far as our search reveals, the statement in the *Simons Case* remained without question the settled law on the point in this State until publication of the first opinion in *Southern Ry. Co.* v. *Johnson*, 143 S. E. 887, 890, where it is stated that "when it is established that signals were not given and injury followed, a presumption arises that the injury was caused by the neglect." On a rehearing this language was stricken from the opinion. See (*Southern Ry. Co.* v. *Johnson*), 151 Va. 345, 146 S. E. 363.

A similar expression is found in *Norfolk & W. Ry. Co.* v. *Mace*, 151 Va. 458, 145 S. E. 362. This is explained in *Virginian Ry. Co.* v. *Haley*, 156 Va. 350, 381, 157 S. E. 776, 785. In the latter case it was definitely held that "proof of the failure to give the prescribed signals and proof of injury and nothing more are not of themselves sufficient to support a recovery." The discussion on the point in that case concludes by quoting the rule announced by Judge Keith in the *Simons Case*, which is undoubtedly the law in this State. See *Atlantic Coast Line R. Co.* v. *Ford* (U. S.), 53 S. Ct. 249, 77 L. Ed. ——, decided January 9, 1933.

The defendant contends that this case is controlled by *Norfolk & W. Ry. Co.* v. *Wellons' Adm'r*, 155 Va. 218, 154 S. E. 575, 577. That case did not involve the comparative negligence statutes, Code, sections 3958, 3959. It is distinctly stated in the opinion that "without discussing the evidence, we will content ourselves with saying that train No. 3 (the one involved in the collision) gave the statutory signals of approach." The negligence there relied upon was the fact that without the consent of the State Corporation Commission the railway company had substituted other stationary signals for gates which had formerly been in use

at the crossing, and under the facts, of course, the common law rule applied, and it was held that the contributory negligence of the passenger in the truck barred recovery.

In *C. & O. Ry. Co.* v. *Barlow,* 155 Va. 863, 156 S. E. 397, the plaintiff himself testified that he approached the crossing with his car under complete control and that he looked "good" and continued to look for approaching trains, there was practically nothing to obstruct his view. If this evidence was true, he was guilty of no negligence; yet the engine, in plain sight, with the headlight burning, was bearing down upon him and struck him before he cleared the crossing.

Under the circumstances, we held that he was bound to have seen the approaching train; that the blowing of the whistle and the ringing of the bell would have given him no further information, and hence that there was no causal connection between the failure to give such signals and the collision.

In *Norfolk & W. Ry. Co.* v. *Eley,* 157 Va. 568, 162 S. E. 3, it was held that the evidence did not show that the railway company failed to give the statutory signals, and until such negligence is established of course there can be no recovery under the statute.

In view of the verdict of the jury, the facts on the point may be stated thus. An automobile in which the plaintiff's intestate, as a passenger, occupied the left side of the rear seat farthest from the aproaching train, was being driven in a westerly direction, slowly and apparently under complete control, as it approached the crossing; 184 feet from the point of the accident the highway crosses a bridge over a small stream; from this bridge to the crossing the right of way to the north is visible except when the line of vision is obstructed by a garage, two stores, a dwelling house and some trees. When the automobile was within fifty feet of the southbound rails the view to the north of the crossing was unobstructed for some two thousand feet, and thirty-nine feet from the center of the southbound rails the view

to the north was unobstructed for two miles. The freight train running from thirty-five to forty miles an hour, approaching the crossing from the north, failed to give the signals required by statute. After the automobile had passed over the spur track and when the approaching engine was within thirty yards of the crossing, the fireman saw that although the automobile was traveling slowly it was not going to stop, and he yelled to the engineer to apply the emergency brakes, which he did, but too late to avoid the collision.

These facts convict both the defendant company and the driver of the automobile of negligence. The employees of the defendant company violated a criminal statute (Code, section 3960) ; the driver of the automobile violated a common law duty to exercise ordinary care for his own safety and that of his passengers on approaching a known place of danger. There is no evidence tending to show that Grant Whetzel or the operator of the automobile were aware of the approaching train, or that there was an attempt to beat the train to the crossing, or that the driver and his passengers desired to commit suicide.

It is a matter of common knowledge that the shrill blast of a locomotive whistle or the continued ringing of a large bell is more easily heard than the roar of an approaching train, and travelers possessed of average hearing usually heed such warnings. The statute is based upon this fact. The evidence establishes that the occupants of the automobile were in a position to hear and heed the statutory signals if they had been given. According to the ordinary experience of mankind, the jury were warranted in the conclusion that the injury would not have occurred had the statutory signals been given. The trial court approved the verdict, and the plaintiff in this court is entitled to every reasonable inference fairly deducible from the evidence. This conclusion is supported by numerous cases, we only refer to the most recent.

In *Virginian Ry. Co.* v. *Bacon,* 156 Va. 337, 157 S. E. 789, the facts were that the highway and the right of way for some 1,700 feet are parallel and in plain sight; that both the train and the automobile in which Bacon was riding were going west; that Bacon was on the front seat with the curtains up. Some 200 feet from the crossing the highway verges to the right and crosses the right of way; from this point to the crossing the only obstruction to the driver's view of the approaching train was a pile of cross-ties, but the engine of the train could be seen over the top of these. The driver of the car requested Bacon to watch on his side for an approaching train, which he claims to have done, but he did it carelessly and the train struck the automobile at the crossing. While the case was reversed on other grounds, it was held that whether or not the negligence of the railway company in failing to give the statutory signals was a contributing cause of the injury was a jury question.

In that case the plaintiff was riding on the front seat and was requested by the driver to look out for a train; if Bacon had looked carefully he could have seen the approaching train at any point within 200 feet of the rails. While the traveler was on the highway and before he made the turn to cross the right of way the train was approaching from the rear, but after making the turn and within 200 feet of the tracks the angle of approach was about fifty degrees. In the case at bar numerous houses partially obstructed the view of plaintiff's intestate, and he was riding on the rear seat, farthest from the train. See, also, *Norfolk & W. Ry. Co.* v. *Hardy,* 152 Va. 783, 148 S. E. 839; *Southern Ry. Co.* v. *Johnson,* 151 Va. 345, 146 S. E. 363.

(3) The third contention of the defendant is that the contributory negligence of Grant Whetzel and the driver of the car was the sole proximate cause of the accident.

Section 3958 requires every railway company to sound certain signals when approaching a highway crossing at a distance of not less than 300, nor more than 600, yards from

it, and to continue sounding the signals until the train has reached the crossing. Prior to the adoption of section 3959, a plaintiff was required to prove (1) that the railway company failed to give the signals, (2) that this failure was the proximate cause of the collision, (3) amount of damage. Recovery would be defeated if the railway company established that such plaintiff was guilty of contributory negligence. Under section 3959 proof of contributory negligence does not bar recovery. The object of this statute, in the language of the revisors, is stated thus:

"Injuries and deaths at grade crossings were becoming so numerous that the revisors were constrained to recommend this additional legislation, the object of which is to require, for the safety of travelers, a more rigid compliance with the preceding section. The new section abolishes the doctrine of contributory negligence on the part of the traveler in those cases where the operators of trains fail to give the statutory signals, and instead of excluding such a traveler from all recovery, as was the case under the former law, it allows him or his representative to recover; but as it did not seem just to place a traveler who had failed to exercise due care on the same footing with one who had exercised such care, the section allows the jury to consider the negligence of the traveler in mitigation of damages."

The plaintiff must still prove the three essentials before he can recover. Contributory negligence does not defeat recovery, but mitigates damages. The statute so states in express terms, viz: "* * * the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery * * * but the failure * * * may be considered in mitigation of damages." This is the new element that section 3959 incorporates into the law of this State.

In the case at bar, the plaintiff's decedent was a guest in the automobile; he occupied the rear seat, on the side opposite the approaching train; the curtains were in place. It has been repeatedly stated that a guest in an

automobile cannot place his safety entirely in the keeping of the driver, but must exercise due and reasonable care for his own protection and safety. *Norfolk & W. Ry. Co.* v. *Wellons' Adm'r,* 155 Va. 218, 225, 154 S. E. 575. This degree of care and caution is that which a reasonably prudent man would exercise under the circumstances.

In *C. & O. Ry. Co.* v. *Meyer,* 150 Va. 656, 666, 143 S. E. 478, 482, it is said:

"It is true that a passenger cannot blindly trust to his driver, but in the nature of things one on the back seat is not required to exercise that degree of vigilance which is demanded of the chauffeur. *Director General* v. *Lucas,* 130 Va. 212, 107 S. E. 675, and *Hancock* v. *N. & W. Ry. Co.,* 149 Va. 829, 141 S. E. 849."

In addition, there is evidence in this case to show that automatic signals had been installed at this crossing and that they gave no warning of the approaching train. This fact lessened the degree of care which Grant Whetzel was required to exercise for his own safety.

Judge Buchanan in *Kimball & Fink* v. *Friend,* 95 Va. 125, 140, 27 S. E. 901, 904, announced the law in this State on the subject, as follows:

"The erection of gates, gongs, or other devices at highway or street crossings to warn travelers of approaching trains does not excuse a traveler at such crossings from exercising ordinary care and caution. And while courts and text-writers differ as to the degree of reliance that may be placed upon the invitation which an open gate or silent gong gives to the traveler to cross, they generally, if not universally, hold that the same degree of care and caution is not required of him, as if there was no such invitation."

To support the rule, numerous authorities are cited. The uncontradicted evidence in that case shows that the traveler's view of the approaching train was obstructed by a high embankment until he was within a few feet of the rails.

Judge Burks, in *Davis* v. *McCall,* 133 Va. 487, 113 S. E. 835, criticized this rule, but stated in the opinion that the

other members of the court did not agree with him and that they adhered to the principle announced in the Kimball and subsequent cases.

In *Southern Ry. Co.* v. *Davis*, 152 Va. 548, 147 S. E. 228, there was evidence tending to show that the stationary warning signals at a grade crossing were not operating at the time the driver of a truck attempted to cross the tracks of the railway company, and it was established by uncontradicted evidence that there were no obstructions to prevent his seeing the oncoming train from a place of safety in time to avoid the injury. Held, that the truck driver was guilty of contributory negligence as a matter of law. The court stated that where there are obstructions to the view and the traveler is exposed to sudden peril without fault on his part and must make quick decision, the question of his contributory negligence should be submitted to the jury, citing *Davis* v. *McCall*, 133 Va. 487, 113 S. E. 835, and *Chapman's Adm'r* v. *Hines*, 134 Va. 274, 115 S. E. 373.

In *Seaboard Air Line Ry. Co.* v. *Terrell*, 149 Va. 344, 356, 141 S. E. 231, 235, an instruction was approved which told the jury that "While the same degree of care is not required as at a crossing where no such devices are used, still he must use such reasonable care as an ordinarily prudent person would exercise under like circumstances to ascertain whether or not a train is approaching. They cannot rely entirely on an open gate as a guarantee of safety."

In the case at bar, we have a passenger in an automobile who is not charged with the same degree of care and caution which the driver must exercise in looking and listening for approaching trains, and while it is true that if he had looked and listened when the car reached some fifty feet of the point of impact he could have seen the train, his view was obstructed to some extent by the curtains of the automobile. In addition, he had a right to place some reliance upon the statutory signals to warn him of the approaching train. Under all the circumstances, the contributory negligence of Grant Whetzel was a jury question.

In logical sequence the next question to be determined is whether the negligence of the defendant company was the contributing cause of the accident. Or, to state the question differently, was the negligence of the driver of the automobile the sole proximate cause of the collision? If he attempted to make the crossing with knowledge that the train was approaching, then the failure to give the statutory signals was not a contributing cause, and there is no liability upon the defendant company. The driver and his companions were killed almost instantly, hence there is no one to say whether or not they were aware of the approach of the train.

Did the driver look? From the facts and circumstances two inferences are possible. One is that he did not look, the other that he did. If he looked he was bound to have seen the train, and in that case his negligence would be the *sole* proximate cause of the accident. If he did not look, he was guilty of negligence, but such negligence, under the statute, does not bar recovery. In order to draw the inference that he looked and undertook to cross the tracks when the fast approaching train was only twenty-five or thirty yards from the crossing would be to conclude that he deliberately and purposely placed himself and the other occupants of the automobile in imminent peril. While this may be a possible inference it is not a fair and reasonable inference to draw. As stated, there was no attempt to race with the train. The automobile was approaching the crossing slowly and under control. Both the driver and Grant Whetzel had the right to place some reliance upon the automatic crossing signals, and the evidence tends to show that they were not properly functioning. The mere fact that the speed of a slowly moving car is slightly increased before reaching the tracks at a railroad crossing is not sufficient to show that the operator has seen the approaching train. It is true that before reaching the crossing the speed of this car had been reduced to about five miles an hour, and that it was slightly increased when within fifty feet or less of

the southbound track; but this falls far short of showing that the driver attempted to commit suicide, or knowingly placed himself and his companions in the path of certain death. The probable and reasonable inference to be drawn from all the facts and circumstances is that the driver did not look to see whether a train was approaching. This is evidently the conclusion which the jury drew, and we cannot say as a matter of law that they were wrong.

(4) The defendant maintains that there was not sufficient evidence tending to show defective operation of the automatic signals to submit that question to the jury. These signals were operated by electricity, and connected by wires attached to the track in two places. The mechanism was so designed that when the front of the train reached a point 1,400 feet north of the center of the crossing the weight of the engine or the car passing over that point so depressed the track that it served as a switch to turn on the electric current, which started the bell to ringing and turned the light on red at the crossing. This mechanism on the track is designated in the evidence as a "trip." The signals when set in motion by this "trip" would continue to function for ninety seconds; if in that time the rear of the train had passed over the "trip" and the engine had not reached a point fifty feet of the center of the crossing, they would cease to function.

The second, or auxiliary, connection extended fifty feet in either direction from the center of the crossing, and was so designed that when the front of the train reached this distance from the crossing the warning signals would operate and continue to operate until the rear of the train had passed over the crossing and fifty feet beyond. The purpose of these two mechanisms was that in the event the train was delayed more than ninety seconds between the "trip" and the auxiliary switch travel on the highway would not be unduly hindered by the warning signals.

Two witnesses for the plaintiff, Mr. and Mrs. E. M. Tabb, testified that they were standing at the crossing when the

train preceding the one involved in the collision, and some thirty minutes before that time, passed going south, and that the automatic signals did not function until the engine was almost on the crossing. The defendant objected to this testimony on the ground that it had no probative value and did not tend to show that the automatic signals were defective in operation. But Mrs. Tabb testified that she saw the train at the Broad Run bridge, or below it, that is before it reached the "trip;" that it was a freight train and did not stop between the bridge and the crossing, and that the red light did not come on until the engine was "almost on" the crossing.

The objection to this evidence was not well taken, and if believed by the jury it established that when the train immediately preceding the one involved in the collision passed over the "trip" the automatic signals did not work.

Mrs. T. H. E. Dickins, whose house was seventy-eight feet from the nearest track and 132 feet from the southbound track, testified that from her window she saw the automobile in which the boys were riding pass her house as it approached the crossing, and that after they got out of her line of vision and closer than her house to the point of impact she saw the green light shining at the crossing and the train approaching between the "trip" and the highway.

Two other witnesses, Miss Hovey and Miss Smith, testified that immediately after the impact they went to the scene and were sitting in an automobile watching to see if the signals would properly function when the next train passed going south. Both testified that neither did the bell ring nor the red light come on until the engine was within a few feet of the crossing. Miss Hovey testified that she was watching this train from the time it passed the Broad Run bridge until it reached the crossing, with the result above stated.

Miss Mary Esther Dickins testified that she was standing in a store door sixty feet from the track watching the same train referred to by Miss Hovey and Miss Smith, and that the warning signals did not operate until the engine got nearly to the crossing. It appears from the evidence that the automatic signals were installed February 1, 1929, and that the collision occurred March 10, 1929. There was other evidence tending to show that the automatic signals did not function properly within two weeks before and several days after the accident, to which objection was interposed on the ground that the inquiry was confined to the "condition of this light at the time of the accident." This evidence was relevant on the charge in the declaration that the defendant was guilty of negligence in maintaining the automatic signals and as to whether they were reasonably efficient in their operation after installation.

Some of the other witnesses testified that the signals did not operate until the train was within a few feet of the crossing, but did not state whether they observed the train before it passed over the "trip." Such testimony has little, if any, probative value on the question of the condition of the signals unless the approximate speed of the train was given, or some method indicated by which the jury could ascertain whether more than ninety seconds had elapsed after the rear of the train passed over the "trip" before it reached the crossing. Its admission, however, under the circumstances does not constitute reversible error. While the evidence for the defendant tended to establish that the automatic signals were functioning properly at the time of the accident and were properly maintained, there was sufficient evidence to the contrary, introduced by the plaintiff to make it a jury question.

The defendant excepted to the action of the court in refusing to permit the introduction in evidence of the summons for defendant's witness, Mrs. Frances Reedy. This witness lived with her husband on the highway near Bristow; both were at home at the time of the collision,

but in separate rooms; both testified that they heard the statutory signals and saw the train as it approached the crossing and that the automatic stationary signals were duly functioning. For the purpose of impeaching this witness she was asked the following questions:

"Q. Didn't you ask Miss Smith upon this occasion whether she had been summoned and didn't she say no, she had not, and didn't you say 'I haven't been summoned either but Silas (referring to your husband) has,' and didn't you then claim to Miss Smith that you had seen the accident and didn't Miss Smith make a remark that that was strange? Didn't Miss Smith ask you if Silas saw the wreck and you said no, he didn't, and didn't Miss Smith—

"A. He didn't see the wreck but he heard the crash.

"Q. Didn't Miss Smith say 'That is strange; you claim you saw it and you have not been summoned and Silas didn't see it and he has been summoned? Don't you remember that conversation?

"A. No, sir, I don't remember that.

\* \* \* \* \* \* \* \* \*

"After you saw the wreck you went into the dining room where your husband was and told him that there had been a wreck, that a car had been hit down at the crossing?

"A. I told him that?

"Q. You told Miss Smith that?

"A. I certainly did.

"Q. And didn't you tell Miss Smith that his reply to you was 'Oh, no, I guess not.'

"A. No, I don't remember answering that. When I went in there he was rushing out, him and another man.

"Q. Didn't you tell Miss Smith when he made this remark, 'Oh, no, I guess not,' that you told your husband, 'Yes, I know it because I saw it?'

"A. No, I didn't say nothing like that.

"Q. You didn't make any such statement to Miss Smith?

"A. No, sir."

Miss Smith, when called in rebuttal, testified that Mrs. Reedy did make the statements set out above, and that she commented on the fact that Mr. Reedy had been summoned as a witness and Mrs. Reedy had not.

The defendant then offered to introduce in evidence the summons for Mrs. Reedy, issued May 20, requiring her to appear in the trial court on the 4th day of June, returned by the sheriff "executed," but the sheriff did not state in his return the day upon which he served the subpoena. There was no offer to prove when the summons was served, whether before or after the alleged conversation. Under these circumstances, the ruling of the trial court was correct.

A number of objections were taken to the giving and refusing of instructions, but most of these were based on the defendant's view of the evidence. Our view as herein expressed renders it necessary to discuss the objection to only one instruction. The court, on request of the plaintiff, amended defendant's instruction number one. This instruction, with the amendment in italics, is as follows:

"The court instructs the jury that if the engineman and other employees in charge of locomotives operating over railroad tracks have given the highway signals required by law, and have exercised ordinary care to give warning of its approach to a highway, observe a vehicle on a highway approach a grade crossing, they have the right to assume that all the occupants of such vehicle will observe such signals, have looked and listened to ascertain and have ascertained the approach of the train and will not attempt to cross the track in front of such train in dangerous proximity thereto, and conduct themselves accordingly, and are therefore under no obligation to give further warning or to attempt to slacken the speed of the train until and unless in the exercise of reasonable care it becomes apparent or should be apparent to such engineman or other employee in charge of the train that such travelers either cannot, or will not, take care for themselves, and if it is then too late

to avoid injury to the travelers by the exercise of means then within the power of the engineman or other employees in charge of such locomotive, the railroad company cannot be held responsible for the result and the verdict should be for the defendant, *unless the jury further believe that Grant W. Whetzel was lured into a position of peril without his own negligence, or that of the driver of the car, by signals defective in themselves, or improperly installed or maintained.*"

 The instruction, as requested, directed a verdict but made no reference to any evidence which tended to show that the automatic signals were not functioning at the time of the collision. A finding instruction for a defendant must negative, in some form, all grounds of negligence relied upon and which the evidence tends to prove. It therefore was the duty of the court either to amend the instruction in some form to correct this omission, or to refuse the instruction as requested. While the amendment is not in as exact terms as should have been used, when read in connection with the other instructions, particularly Numbers 3, 11, B and M, the jury could not have been misled thereby. We also think that the word "lured" is too strong a term to use in this connection. The defendant, however, could not successfully object to its use, because in its instruction A it used the same word.

We find no reversible error and the judgment is affirmed.

*Affirmed.*

HOLT, EPES and BROWNING, JJ., dissenting.

HOLT, J., dissenting:

I restate the facts because they are colored by their setting and sequence, and may be as misleading as figures sometimes are—two and two make four, also they make twenty-two; indeed, we do not always see the same thing in the same picture. What to one man is a whale, to another seems backed like a weasel.

On the afternoon of Sunday, March 10, 1929, at 3:05 o'clock, Grant Whetzel, a boy between fourteen and fifteen years old, together with three companions—a brother, Frank, Hampton Kerlin and a lad named Smith—were all killed in a crossing accident at Bristow, in Prince William county, a station and village on the main double-track line of the Southern railway, which there crosses the county road at grade. The railroad runs north and south, the county road east and west. These boys were in a Chevrolet touring car, with badly broken curtains down. It was going west, and was struck by a southbound train on the west track. The train itself was a fast freight, made up of sixty-four cars, traveling up-grade at a speed estimated to be from thirty to thirty-five miles an hour.

There is no definite testimony to tell us who was driving, but the car itself belonged to young Kerlin's father, and was seen less than an hour before the acident. At that time Hampton was at the wheel. Frank Whetzel sat by him on his right in the front seat. Smith was on the right rear seat, and Grant on the left rear seat. They were village neighbors, lived at Aden, and according to custom were on a pleasure drive this Sunday afternoon.

One hundred and eighty-four feet from the point of the accident, the county road crosses a bridge over a small stream. Distances and positions from which a train can be seen are shown on an attached plat.* A house track runs east of the main line. From the bridge to the crossing the right of way to the north is visible except when obstructed by a garage and by another building, a dwelling and store. Until the dwelling and store is passed there are some trees and bushes to the right, but through them in March the railroad and particularly a train thereon, could be plainly seen. The east rail of the house track, point No. 2, is fifty-four feet from the place of the accident and from it there is an unobstructed view to the north for 2,000 feet.

*See plat, page 820.

From point No. 1, thirty-nine feet from the point of acci-

dent, there is an unobstructed view for an indefinite dis-
tance.

Lynch, a fireman, saw the car when it was twenty-five or thirty yards away. It was then between the house track and the northbound main line and going slowly. The manner of its progress seemed to show a purpose to stop. This it did not do, but picked up and went forward. Lynch then called out to the engineer who sat on the right or far side of the cab, but it was too late to check in time this freight train, half a mile long.

At this crossing was an automatic electric signal. The plaintiff contends that it was not in working order, and that the crossing signals were not given. These are the acts of negligence relied upon.

While, as we have seen, there is no direct testimony to tell us who the chauffeur was, it seems fair to assume that it was Kerlin. It was his father's car, he was in charge of it when last seen, and it is reasonably certain that Grant was not, for he did not know how to drive a car of this type. While it does not affirmatively appear that these boys were intimately familiar with the physical situation at Bristow, they must have known what it was, for they were in the habit of driving around in that neighborhood on Sunday afternoons.

In the consideration of cases of this character certain settled rules are to be remembered.

The bare happening of an accident raises no presumption of negligence, whether that accident be at a crossing or elsewhere, nor will mere proof of negligence itself sanction a recovery. It must have been a contributing cause. Between it and the accident there must be some causal connection. All this the plaintiff must show—that is to say, he must prove his case. He must bear that burden which every other plaintiff bears.

In *Western & Atlantic Railroad* v. *Henderson,* 279 U. S. 639, 49 S. Ct. 445, 446, 73 L. Ed. 884, it appears that there is a Georgia statute which provides that "A railroad company shall be liable for any damages done to persons, stock, or other property by the running of the locomotives, or cars,

or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." The declaration, *inter alia*, charged that no whistle was sounded. There was a judgment for the plaintiff in the trial court, which was affirmed in the Court of Appeals and in the Supreme Court of that State. Mr. Justice Butler said:

"Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence was the proximate cause of the death; and it makes defendant liable unless it showed due care in respect of every matter alleged against it. * * *

"The presumption raised by section 2780 (the Georgia statute) is unreasonable and arbitrary and violates the due process clause of the fourteenth amendment."

This court, by construction, has read into the statute a purpose which, if therein plainly expressed, would have made it unconstitutional.

Mr. Freeman, in an extended note on proximate and remote cause, 36 Am. St. Rep., at page 817, said: "The general rule is" (in dealing with breaches of statutory duty) "that, if a breach of a statute is relied upon by the plaintiff as a cause of action, he must show not only that he is one of the class for whose benefit the statute created a duty * * * but, also, that the breach of the statute is the proximate cause of the injury; * * *. The question is, was the breach a *causa sine qua non*, a cause which, if it had not existed, the injury would not have taken place:" * * *

"The general rule has been often applied to cases of omission on the part of the servants of railroad companies to give signals on approaching crossings."

In 3 Elliott on Railroads (3d ed.), section 1648, it is said: "In no event is the omission to give the statutory signals sufficient of itself to make out a case, for there must be evidence showing that it was the proximate cause of the injury."

It is not necessary to fly a danger signal announcing the presence of a hurricane. This elementary principle is not only good law, but it is law which we ourselves, in part, have made. *Wyatt* v. *Chesapeake & Potomac Tel. Co.*, 158 Va. 470, 163 S. E. 370; *Virginian Ry. Co.* v. *Haley*, 156 Va. 350, 157 S. E. 776, 785; *C. & O. Ry. Co.* v. *Barlow*, 155 Va. 863, 156 S. E. 397, 400; *Norfolk & W. Ry. Co.* v. *Wellons' Adm'r*, 155 Va. 218, 154 S. E. 575; *Etheridge* v. *Norfolk So. Ry. Co.*, 143 Va. 789, 129 S. E. 680; *Norfolk So. Ry. Co.* v. *Banks*, 141 Va. 715, 126 S. E. 662; *Hayes* v. *Mich. Cent. R. Co.*, 111 U. S. 228, 4 S. Ct. 369, 28 L. Ed. 410; *Pennsylvania R. Co.* v. *Hensil*, 70 Ind. 569, 36 Am. Rep. 188; *Baltimore R. Co.* v. *Young*, 146 Ind. 374, 45 N. E. 479; *McDonald* v. *International, etc., R. Co.*, 86 Tex. 1, 22 S. W. 939, 40 Am. St. Rep. 803; *Kujawa* v. *Chicago, etc., R. Co.*, 135 Wis. 562, 116 N. W. 249; Shear. & Red. on Neg. (6th ed.), section 485; 2 Elliott on Railroads (3d ed.), section 842. And so we may take as established this doctrine, which now nobody denies.

With it in mind, let us, for the sake of argument, assume that negligence has been shown; that the crossing signals were not given; that the automatic electric warning was out of order, and that plaintiff's decedent was a guest to whom the driver's negligence could not be imputed. Plaintiff must still show that negligence, thus admitted, was a proximate cause.

Death has closed the lips of every victim of this moving tragedy, and so we must in a large measure rely for guidance upon attendant circumstances and such inferences as they fairly support.

Did the driver look? Two presumptions were possible.

He may not have looked; he may have looked and yet have failed to heed what he saw.

"Where it appears that a person approaching a railroad crossing could, by looking or listening, have seen or heard an approaching train in time to have avoided injury, it will not, in case of an accident, be presumed that he looked or listened, or was in the exercise of due care, but the presumption, if any, will be that either he did not look or listen, or if he did so, that he did not heed what he saw or heard, and if such circumstances are shown by conclusive or undisputed evidence the presumption will be conclusive. If the traveler fails to look it will be presumed that he would have seen the approaching train had he looked." 52 Corpus Juris, section 1984.

If he looked, he saw the train, and this presumption obtains though he were alive and said that he did not. *C. & O. Ry. Co.* v. *Barlow, supra.*

"It is simply and flatly impossible that one can stop, look and listen for an approaching train that is in plain view and close at hand, and be unable to see or hear it, if he possesses the senses of sight and hearing. It seems, therefore, necessary to advance one step in the application of the doctrine of legal presumption, and to lay it down as a rule that one who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence and to have gone negligently into an obvious danger. A line of well considered cases leads fairly up to this conclusion." *Myers* v. *B. & O. R. Co.,* 150 Pa. 386, 24 Atl. 747, 748.

"That plaintiff, in possession of good sight and hearing, could have looked and listened, and not have seen or heard the train which must have been in plain view, and making a great noise, is contrary to all reasonable probability, in opposition to the physical facts, and impossible of belief. In these circumstances his testimony that he looked and listened is entitled to no credence, and does not create a con-

flict in the evidence." *Chicago & N. W. Ry. Co.* v. *Andrews* (C. C. A.) 130 ·Fed. 65, 71.

Plaintiff contends that this driver did look and so states in his brief:

"The testimony of H. A. Lynch and that of the other witnesses who observed the approach to the crossing of the automobile in which the plaintiff's intestate was riding, shows clearly that the occupants of the automobile were not only apprized of the proximity of the crossing, but that they appreciated the danger presented by it, and that they were not relying wholly on the green light or the failure of the crossing gong or bell to sound as indicating that no train was approaching, but that they were in addition taking the precaution of slowing down and looking and listening for the purpose of determining whether a train was in fact approaching, of whose aproach they would have been put on notice had the statutory signals in fact been given."

Lynch, the fireman, is the only eyewitness who has testified as to the conduct of the car just before the accident. This appears in his cross-examination:

"Q. What I am trying to do is find out exactly the impression that the appearance of this car made upon you and I am trying to recall to your mind a conversation you had with Mr. Moore, the engineer. Didn't you state to Mr. Moore that day in regard to this thing that these boys or this car was coming along very carefully?

"A. I didn't say that. I said I was looking for them to stop.

"Q. Do you mean that the appearance of the car indicated they were about to stop?

"A. Yes, sir, were going to stop, yes, sir."

From this it may fairly be inferred that this driver first intended to stop, but misjudging distances and speed, went forward. To hold that the driver never saw the train is to claim more for the plaintiff than he claims for himself. That is to say, we think the plaintiff is right in claiming that Kerlin saw the oncoming train.

If this be true, the value of these warning signals vanishes. We are not helped by being told of the presence of a peril overwhelmingly patent.

Mr. Justice Hudgins, in the *Barlow Case*, said: "This court has consistently construed section 3959, Code, to mean that there must be a causal connection between the failure to give the statutory signals and the injury, but in no case has a recovery been allowed where the undisputed evidence showed that the plaintiff's negligence was the *sole* proximate cause of the collision. If the plaintiff sees that the train is approaching, the blowing of the whistle and the ringing of the bell can give him no further information, and if he attempts to cross the track and is injured the accident is the result of his own negligence, and the negligence of the company in failing to give the statutory signals cannot be said to be a contributing cause of his injury."

Putting aside for the moment these conclusions, it is true beyond peradventure that Kerlin looked, or did not look. If he looked, there was a conscious, wilful and unnecessary assumption of risk for which he alone is responsible. If, in absent-mindedness, he failed to look, we have merely a case of gross negligence, and gross negligence will not preclude a recovery where crossing signals were not given. Code, sections 3958, 3959. In the one case there could be no recovery; in the other same judgment should follow.

This was the situation which confronted the court in *Chicago, R. I. & P. Railroad Co.* v. *Houston*, 95 U. S. 697, 702, 24 L. Ed. 542, where it said: "But aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employes in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed

both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case, we cannot see any ground for a recovery by the plaintiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation."

"The presumption that the deceased used due care is destroyed by the force of physical facts shown by undisputed evidence, and the inevitable inference must be drawn therefrom that deceased either did not look or listen, or, having looked and listened, he endeavored to cross in front of the train. He was, therefore, as matter of law, guilty of contributory negligence." *Rollins* v. *Chicago, M. & St. P. Ry. Co.* (C. C. A.) 139 Fed. 639, 642.

"When the uncontradicted evidence conclusively shows that the colliding train must have been plainly visible from the point at which the testimony shows that the injured or killed person looked and listened for the train, the law conclusively presumes either that he did not look and listen, or that if he did look or listen, or both, he afterwards heedlessly disregarded the knowledge thus obtained and negligently went into an obvious danger." *Carlson* v. *Chicago & N. W. Ry. Co.*, 96 Minn. 504, 105 N. W. 555, 556, 4 L. R. A. (N. S.) 349, 113 Am. St. Rep. 655.

In these cases this double possibility was recognized: *Downey* v. *Pere Marquette Ry. Co.*, 230 Mich. 243, 202 N. W. 927; *Northern Pac. R. R.* v. *Freeman*, 174 U. S. 379,

19 S. Ct. 763, 43 L. Ed. 1014; *Clark* v. *Union Pac. R. Co.,* 70 Utah 29, 257 Pac. 1050; *Woolf* v. *Washington, etc., R. Co.,* 37 Wash. 491, 79 Pac. 997; *Clemons* v. *Chicago, etc., R. Co.,* 137 Wis. 387, 119 N. W. 102; *Akerson* v. *Great N. Ry. Co.,* 158 Minn. 369, 197 N. W. 842; *Rushford-Surine* v. *Grand Trunk Ry. Co.,* 239 Mich. 19, 214 N. W. 168; *Norfolk & W. Ry. Co.* v. *Hardy,* 152 Va. 783, 148 S. E. 839.

Here, in either instance, there is a conclusive presumption of negligence, but its effect, as we have seen, is changed by statute in Virginia. When there is merely a negligent failure to look, some recovery is still possible, but if there was a conscious attempt to outdistance the train to the crossing, then such an act is the sole proximate cause of the accident and the failure of warning signals has with it no causal connection.

In *Norfolk & W. Ry. Co.* v. *Wellons' Adm'r,* 155 Va. 218, 154 S. E. 575, 579, it appears that a guest that sat by a driver was killed. The court said: "* * * an open gate was no invitation to the driver to attempt to beat the train to the crossing. His negligence was the sole present proximate cause of the accident and superseded the remote negligence of the railway. *Appalachian Power Co.* v. *Wilson,* 142 Va. 468, 129 S. E. 277. Here again was no causal connection. The fact that the gates were up in no wise contributed to the accident."

Where an accident might have occurred in one of two ways, one just as probable as the other, one of which would support a recovery and the other not, then the plaintiff must fail, for he is bound to make out his case by a preponderance of the evidence. It cannot rest upon conjecture, and guesswork will not support a judgment.

"If it appears that the facts and circumstances from which a conclusion is sought to be deduced, although consistent with that theory, are equally consistent with some other theory," there can be no recovery. *Hicks* v. *Romaine,* 116 Va. 401, 82 S. E. 71, 74.

In the case of *General Accident, etc., Corp.* v. *Murray,* 120 Va. 115, 126, 90 S. E. 620, 624, which was a demurrer to evidence case, Judge Cardwell says: "The case is analogous to that class of cases frequently considered and ruled upon by this court, in which damages were sought to be recovered for injuries resulting from an accident alleged to have been caused by the negligence of the defendant, and wherein it has been uniformly held that the burden of showing negligence by a preponderance of the evidence was on the plaintiff, and if the injury might have resulted from one of two causes, for one of which the plaintiff was responsible, but not for the other, the plaintiff could not recover; neither could he recover if it was just as probable that the damage was caused by the one as by the other." *Davis, Director Gen.* v. *Ellis, Adm'x,* 146 Va. 366, 126 S. E. 658, 131 S. E. 815; *C. & O. Ry. Co.* v. *Whitlow,* 104 Va. 90, 94, 51 S. E. 182, 183; *General Accident, etc., Corp.* v. *Murray,* 120 Va. 115, 90 S. E. 620; *Honaker* v. *Whitley,* 124 Va. 194, 97 S. E. 808; *Kendricks* v. *Norfolk,* 139 Va. 702, 124 S. E. 210; *Washington & Old Dom. Ry.* v. *Weakley,* 140 Va. 796, 125 S. E. 672; *Turner* v. *Fireworks Co.,* 149 Va. 371, 141 S. E. 142; *Murray* v. *Carleton* (D. C.) 33 Fed. (2d) 966.

Here was no sudden emergency and none of that confusion incident to urban traffic. No court can search out its heart and say that this train was not seen, and that it must say to sustain a judgment.

In the Code of 1919, sections 3958, 3959, the doctrine of comparative negligence was first introduced in Virginia, a doctrine now nowhere approved unless it rests upon some statute. Shear. & Red. on Neg. (6th ed.), section 102; 45 Corpus Juris, page 1037. Its only effect is to take away contributory negligence as a complete defense. It reduces the amount of compensation but does not wipe it away. Plaintiff must still, as a prerequisite to the right to recover, prove both negligence and causal connection.

This court in the *Haley Case* said: "However, the enactment of section 3959 has not in any degree abrogated or modified the rule of law requiring a causal connection between the failure to give the signals and the injury; has not changed the rules of evidence, or the nature or amount of evidence required to establish such causal connection; and has not established, or given rise to, any new presumption of causal connection between the failure to give the signals and the injury. Nor does section 3959 provide that the proof of the failure to give the signals and of injury following shall be *prima facie* evidence that the injury was caused by the failure to give the signals. The only effect of section 3959 is to remove the complete bar to recovery which the contributory negligence of the plaintiff formerly created, and to give to contributory negligence the effect of merely reducing the amount of recovery to which the plaintiff is entitled. *Norfolk & W. Ry. Co.* v. *Simmons,* 127 Va. 419, 427, 103 S. E. 609; *Gregory* v. *S. A. L. Ry. Co.,* 142 Va. 750, 128 S. E. 272; *Etheridge* v. *Norfolk So. Ry. Co.,* 143 Va. 789, 800, 129 S. E. 680."

In cases of this class, as in other cases, demonstrative evidence is not necessary to support a jury's verdict.

"The proof need not be direct and positive, by some one who witnessed the occurrence and saw how it happened, but it must be such as to satisfy reasonable and well-balanced minds that it resulted from the negligence of the defendant." *Southern R. Co.* v. *Hall,* 102 Va. 135, 45 S. E. 867, 868.

Frequently circumstances alone suffice, as is illustrated by *Virginian Ry. Co.* v. *Bacon,* 156 Va. 337, 157 S. E. 789, 791. There the angle of the car's approach was such that the train "which occasioned the damage, came measurably from behind," and so might have been unnoticed by a careless observer. A jury would have been warranted in believing that it was a case of gross carelessness rather than a wilful assumption of risk. Here a slow-going car came at right angles to a track whose view was unobstructed. It

seemed to hesitate and appeared to be about to stop. If there was reason in this it must have been because the driver wished to look.

It is said that nothing shows decedent to have been negligent. Granted. He may have been extremely careful. We may go further and assume that he saw the train, warned the driver and implored him to stop. In such a case the negligence of the railroad would not have been merely a remote cause of the collision; it would have been no cause at all.

If Kerlin looked he saw the train. To undertake to pass ahead of it was a reckless assumption of unnecessary risk. If it be that this has not been affirmatively established, it is still a possibility, just as his failure to look is a possibility. In one of the contingencies a recovery might be had, in the other not. The right to recover must rest upon proof. Surmise is not sufficient; "perhaps" is not enough.

This dissent deals, in part, with propositions which, though once controverted, seem now to be conceded. In the majority opinion it is admitted that there should be no recovery if the driver saw the train, and to this we give cheerful assent; but it is argued that this evidence does not necessarily show that he did, and may possibly be sufficient to support a contrary conclusion. This possibility is against any fair interpretation of the testimony of the only eye-witness, and, as we have seen, is counter to the contention of the plaintiff himself.

"A demand for damages for an alleged wrongful act does not reach the province of the jury, if there is no evidence of negligence, or if the evidence only suggests the *possibility of negligence,* or is as consistent with the absence of all negligence as with its existence. The court has no right to allow the jury to act on a mere surmise or conjecture." *Chesapeake Western Ry. Co.* v. *Shiflett,* 118 Va. 63, 86 S. E. 860, 863.

EPES and BROWNING, JJ., concur in this dissent.