# Richmond

### The Virginian Railway Company v. Sam F. Craighead.

January 21, 1952.

Record No. 3874.

Present, All the Justices.

The opinion states the case.

*Woods, Rogers, Muse & Walker, Andrew S. Coxe* and *Leigh D. Williams,* for the plaintiff in error.

*Woodrum & Staples* and *Kossen Gregory,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted to recover damages for personal injuries sustained by Sam F. Craighead, plaintiff, when an automobile driven by him was struck at a grade crossing by an electric engine of the Virginian Railway Company. The trial court was of opinion that sections 3958 and 3959 of Michie's Code, 1942, (§ 56-414 of the Code of 1950, prior to its 1950 amendment, and § 56-416, respectively) applied, and so instructed the jury. The jury were also told that the plaintiff was not entitled to recover if they believed that he was guilty of negligence and such negligence was the sole proximate cause of the accident. A verdict of $10,000 was returned in favor of the plaintiff and it was confirmed by the trial court.

The defendant assigns numerous grounds of error; but relies only on two basic contentions,—first, that Code, § 56-414 of the 1950 Code, prior to its 1950 amendment, did not require that the crew of an electric engine give the statutory crossing signals; and second, that the negligence of the plaintiff was the sole proximate cause of the accident, as a matter of law.

In *Norfolk Southern Ry. Co.* v. *Lassiter, post,* p. 360, 68 S. E. (2d) 641, this day decided, a case involving the collision of a truck and a freight train drawn by a Diesel engine, we held that the provisions of Code, § 56-414 applied. We perceive no difference in the requirement for statutory crossing signals

where an electric engine is involved. This, therefore, leaves for our determination the second issue only, and brings us to a consideration of the evidence.

The accident occurred July 16, 1949, at approximately 7:30 p. m., about ten or fifteen minutes before sunset, at Wabun station, in Roanoke county, several miles west of Salem, Virginia. At that point the single track of the Virginian Railway runs east and west, and intersects at right angles a State highway running north and south. Both steam and electric engines pulled trains over that track.

A Virginian Railway freight train consisting of 83 loaded coal cars drawn by an electric engine, bound east towards Roanoke, running at 35 miles per hour, struck an automobile owned and occupied by the plaintiff. Craighead, a 38 year-old experienced automobile mechanic, was driving south towards his home. It was raining, but the witnesses differ as to its intensity. The weather was also described as misty, foggy or hazy. Craighead had the window on the right-hand side of his car, the side from which the train was approaching, up or closed. The headlights of his car were turned on. As he approached the crossing, he observed a truck, with its parking lights on, approach it from the opposite side. Craighead stopped his car about 25 feet short of the crossing to permit the truck to cross, because he thought the driveway over the tracks was too narrow for two cars to pass each other without one of them "bumping on the rails."

O'Neil Martin, the driver of the approaching truck, testified that his truck was in the middle of the tracks when he looked to his left and saw for the first time a train coming 200 or 300 feet distant; that he had not looked before entering the crossing; that he did not hear the engine blow its whistle or ring its bell or make any noise; that he put his truck in second gear and "pulled away"; and that he had crossed the track before he noticed Craighead's car, which he passed 10 or 15 feet north of the tracks.

Craighead said he stopped until the Martin truck got across. Said he, "I looked the other way first—looked to my right, looked to my left, and didn't see anything—there was not any train in sight—the fog and rain it had blinded me— * * *. So after I looked and didn't see anything, there was not any whistle blowing, was not any bell ringing, so I pulled out then, and just as I

eased out on my clutch to pull the car up—just had to go a few feet you see, and I went in on the track, the train struck it and that is the last I remember; in other words, knocked me unconscious, that is the last I remember of what happened; I do remember just as I pulled on the track I just saw the train then and that is all; it was too close to think anything, that was *quick* than a thought there.''

Craighead further said that as he approached the crossing he watched the track on each side, driving in low gear around 5 or 10 miles an hour, slowing up expecting to stop, if necessary, and was traveling at 3 or 4 miles an hour upgrade when the collision occurred. He kept the window on the left side of his car down all the way to prevent the other windows from ''steaming up'' and to keep the rain from blowing in. He said that he could not see whether the locomotive headlight was on or not, ''because the vision was bad there, fog and rain.''

The evidence is conflicting as to whether the train crew gave the statutory crossing signals. Several witnesses, in a position to note and observe them if given, testified positively that no whistle was blown and no bell was rung.

The verdict of the jury, it is conceded, establishes the fact that the signals required by Code, § 56-414 were not given. That was, of course, negligence, and if there was any causal connection between that negligence and the accident, the judgment should be affirmed.

The application of Code, § 56-414 likewise makes applicable § 56-416, which provides that where there is a failure to give these signals of approach at a grade crossing, a traveler there injured shall not be precluded from a recovery by the mere fact that he was guilty of contributory negligence, but that his failure to exercise proper care must be considered by the jury in mitigation of damages. *Norfolk, etc., R. Co.* v. *Hardy*, 152 Va. 783, 797, 148 S. E. 839. There must, however, be a causal connection between the failure to give the prescribed signals and proof of injury to sustain a recovery.

In *Danville, etc., Ry. Co.* v. *Chattin*, 192 Va. 216, 219, 64 S. E. (2d) 748, citing many cases, we said:

''It is clearly the law that proof of failure to give the prescribed signals and proof of injury, with nothing more, is not enough to entitle a plaintiff to recover. Causal connection between that failure and the injury is an essential element of the

plaintiff's case, and the evidence must not leave the question of such connection in the realm of speculation or conjecture, but must afford a basis for legitimate inference in order to constitute a jury question. But if the failure to give the signals proximately contributed to the accident in any degree or in any way, the railway company is liable.''

As·is often said, each case must be determined upon its own peculiar facts and circumstances. In cases of this character, the facts rarely, if ever, present the same situation. The purpose of the statute is to prevent just such an accident as occurred here, and if there are facts and circumstances from which it may be fairly inferred that there is a reasonable probability that the accident would not have happened if the signals had been given, then the question of causal connection is one of fact to be determined by the jury. *Virginian R. Co.* v. *Haley,* 156 Va. 350, 382, 157 S. E. 776.

''It is a matter of common knowledge that the shrill blast of a locomotive whistle or the continued ringing of a large bell is more easily heard than the roar of an approaching train and travelers possessed of average hearing usually heed such warnings. The statute is based upon this fact.'' *Southern R. Co.* v. *Whetzel,* 159 Va. 796, 807, 167 S. E. 427, 430.

The defendant relies strongly on *Chesapeake, etc., R. Co.* v. *Barlow,* 155 Va. 863, 156 S. E. 397, in which the principal question was whether or not the sole proximate cause of the accident was the negligence of the plaintiff. In that case, the accident occurred on a dark night, about eight p. m., when the weather was clear. The plaintiff stated that he looked and continued to look both ways as he approached the crossing. There was no traffic approaching him, and the strong lights of the approaching locomotive were shining on the rails. There was nothing to prevent him from seeing the train if he had looked. We concluded that the statutory signals could not have given him any more warning than his lookout must have disclosed to him.

The facts in *Virginian R. Co.* v. *Haley, supra,* are more like those here. There the train approached from the driver's right in the daytime, while it was raining, and three coal cars on a side track obstructed the view of the driver after he had approached within 28 feet of the track.

In the instant case, the plaintiff testified that he stopped before going upon the crossing; that, looking and listening for a

train, he saw none and heard no signal or sound of its approach; and that his view was obstructed by a closed window of his car and by the rain, fog and mist.

While the evidence does not affirmatively show that had the prescribed signals been given they would have prevented the accident, it may be fairly inferred from the facts and circumstances that had the whistle been sharply sounded at least twice at a distance of not less than 300 yards nor more than 600 yards from the crossing, and its bell rung, or whistle continuously or alternately blown, until the engine had reached the crossing, as the statute requires, there is a reasonable probability that Craighead would have heard the bell or whistle in time to have avoided the accident.

▮ It may be conceded for the purpose of this case, that the plaintiff was guilty of contributory negligence, in that he did not exercise all of the care required under the circumstances; but this would not bar his recovery, because contributory negligence, however gross or flagrant, is no bar to recovery where the statute is applicable, and there is evidence from which a jury may infer that the failure to give the signals proximately contributed to it in any degree or in any way.

In *Southern R. Co.* v. *Johnson,* 151 Va. 345, 354, 143 S. E. 887, 146 S. E. 363, we said:

"If the failure to give the signals in any way contributed to the accident, then, however grossly negligent the traveler was, he is entitled, under § 3959, (now Code, § 56-416), to recover, subject to mitigation of his damages in proportion to his negligence."

See also, *Norfolk, etc., R. Co.* v. *Hardy, supra.*

▮ In conclusion, the evidence rather amply shows that Craighead was never aware of the approaching train until his car had reached the track; that his vision was obscured because of the prevailing weather conditions; and that the engine crew failed to give the prescribed signals. His automobile was approaching the crossing slowly in low gear and under control. There was no attempt to beat the train to the crossing. He had the right to place some reliance upon the giving of the prescribed signals to warn him of the approaching train. There is no indication that he knowingly placed himself in a position of imminent peril. The probable and reasonable inference to be drawn from all the surrounding facts and circumstances is that

if the prescribed signals had been given he would have seen or heard the train and avoided the accident. We cannot say that he was bound to have seen it.

Whether or not the failure of a railroad to give the signals prescribed by statute in operating its trains across a public highway, under a given state of facts, is such negligence as contributed to an accident in any degree or in any way is a question for the jury, unless the facts are such as to disclose that regardless of its failure to give signals the negligence of a person injured at the crossing was the sole proximate cause of the accident.

In *Atlantic Coast Line R. Co.* v. *Bowen,* 192 Va. 162, 167, 63 S. E. (2d) 804, where the same principle of law was involved as here, we held that the jury had not gone beyond the realm of reasonable inference in reaching the conclusion that had the railroad provided the crossbuck sign required by law or maintained a flashing signal light device, the driver of an automobile in collision with its train would have been sooner and more timely warned of the existence of the track or the approaching train, and thus have been able to avoid the mishap that occurred.

In this case the jury had a view of the crossing, an opportunity to hear and observe the witnesses, and the trial court has approved their verdict. We find no reversible error, and the judgment is affirmed.

*Affirmed.*