## Richmond

### George R. Poole, Et Al., Etc. v. Marjorie Hassell, Administratrix, Etc.

April 26, 1965.

Record No. 5894.

Present, All the Justices.

*Thomas R. McNamara (J. Riley Johnson, Jr.; Williams, Cocke, Worrell & Kelly*, on brief), for the plaintiffs in error.

*Richard G. Brydges (James R. McKenry; Brydges & Broyles*, on brief), for the defendant in error.

Spratley, J., delivered the opinion of the court.

Marjorie Hassell, administratrix of the estate of her deceased husband, Sylvester Hassell, hereinafter referred to as plaintiff, filed a motion for judgment against George R. Poole and the Norfolk and Western Railway Company, hereinafter referred to as defendants, to

recover damages for the death of her husband, who was killed on October 31, 1960, when an automobile which he was operating was struck by a Norfolk and Western Railway train operated by George R. Poole, at a public highway crossing.

Upon the trial of the action, there was a verdict in favor of the plaintiff in the sum of $25,000.00.

We granted this writ of error.

There were seventeen assignments of error to the rulings of the trial court; but the only issue presented to us upon review is: Was there enough evidence to sustain the verdict of the jury finding that the railway company failed to give the signals required by Code, § 56-414 [1959 Repl. Vol.]?

Code, § 56-414 provides that:

"Every railroad company shall provide each locomotive or Diesel engine passing upon its road with a bell of ordinary size and steam whistle, or horn, and such whistle or horn shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than three hundred yards nor more than six hundred yards from the place where the railroad crosses upon the same level any public highway crossing, and such bell shall be rung or whistle or horn sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require. (Code 1919, § 3958; 1950, p. 944; 1956, c. 164.)"

The trial judge instructed the jury that Hassell, plaintiff's decedent, was guilty of negligence as a matter of law; but that, under Code, § 56-416, his negligence was not a bar to a recovery, if they believed from a preponderance of the evidence that the crossing signals required by § 56-414 were not given, and that such failure on the part of the defendants contributed to the accident.

The accident occurred about three or four minutes before seven a. m., on October 31, 1960, at a grade crossing referred to as the intersection of Old Deep Creek Road and the Norfolk and Western Railway Company track, in Norfolk county, now the city of Chesapeake. At this location, the railway track extends east and west, and Old Deep Creek Road extends north and south. The track and highway intersect at a right angle. Sylvester Hassell, thirty-seven years old, accompanied by Jimmy Soles, nineteen years old, was driving his 1959 Chevrolet automobile south on Old Deep Creek Road and was crossing the railway track when it was struck broadside by defendants' Diesel engine, which was traveling forty to forty-five miles

per hour in an easterly direction toward Norfolk. Both Hassell and Soles were killed.

Plaintiff relies upon the testimony of three witnesses to prove that no statutory signals were given by the train. Defendants contend that the testimony of their witnesses proves that the required signals were given. The evidence pertinent to the sole issue is as follows:

The witnesses for plaintiff were three United States Navy enlisted men: Linjamen T. Cummings, Hoyt Black and Flemming Waller, Jr., who were on their way in a Volkswagen micro bus, together with two other service men, to Oceana Naval Air Station, where they were stationed. They traveled that morning over Gust Road to Old Deep Creek Road along the same route which they had followed on every working day for the past year or more. The weather was fair. It had been raining; but it had cleared up and visibility was good. The automobile was owned and operated by Cummings, a Chief Steward's Mate. Gust Road proceeds in a southeasterly direction until it merges with Virginia Drive to form Old Deep Creek Road. From Gust Road the view to the right towards the railway right of way is open and clear, and an unrestricted view of the railroad track may be had for a distance of 730 feet west of the crossing over Old Deep Creek Road.

Hoyt Black, seated on the right-hand side of the back seat of the automobile, testified that he had been riding over the railway crossing on Old Deep Creek Road about the same time every weekday morning for "pretty near a year or more;" that he was familiar with the crossing and the time of the arrival of the morning freight train; that he had his window down and "was watching out for the train at that particular time because" of what had occurred "three days before that —;" that he saw the train approach the crossing, distant "around about a couple hundred yards or more;" that he saw the collision; and after the collision heard the train blow its whistle for the first time. He was "positive" that no horn, whistle or bell was sounded until after the crash. He was not permitted, upon objection of defendants, to relate what had occurred three days before to cause him to watch out for the train.

Linjamen T. Cummings said that he had his window down; that he saw the train strike the automobile; that prior to the collision the train did not "blow;" that he recalled hearing only "noise from the train but not any whistle sound, anything of that noise;" and that the train did "blow after it struck the car, definitely." He was "positive"

that he "heard" no "whistle sound" or "any bell sound" prior to the collision.

Flemming Waller, Jr., who sat in the right front seat of the car, said that the windows on his side were down; that he was familiar with the crossing and the time "that particular train came down the track;" that he saw it nearly every morning; and that on "this particular morning" he did not see the collision because he wasn't "paying that much attention to the accident," but was listening to hear the train blow. When asked, "Did the train blow?" he replied, "No, it didn't." When asked, "Did it give any signal of any kind?" he said: "No, it didn't." When questioned if he was positive of that, he answered: "Positive." In addition, he said: "I heard the whistle blow continuously after the accident occurred."

The evidence of plaintiff shows that the occupants of the Volkswagen had a motive for looking for the train and listening for signals as it approached the crossing over which they intended to pass, a motive of safety for themselves. They had full opportunity to see the train and hear the signals, if any were given. Two of them were looking at the train as it approached the crossing and struck the automobile. Two said positively that the train gave no signals before it struck the car. One said that he "heard" no signal of horn, whistle or bell, but only the noise of the moving train. He had full opportunity to hear the signals if they had been sounded.

The defendants presented twelve witnesses. Four were members of the train crew, and eight resided in the vicinity of the railway crossing. One member of the train crew, who was in the caboose, could not say whether or not the signals were given before the accident. George R. Poole, engineer, and B. E. Lovern, the fireman, who were riding in the cab of the forward Diesel engine, testified positively that the statutory signals were given. James A. Tuck, the brakeman, riding in the caboose, said he heard the whistle blow about seven hundred and thirty feet from the crossing at a point where the Portsmouth Gas Company plant is located.

The other eight witnesses, who lived in the neighborhood of the crossing involved, testified that they either heard the whistle sounded or the bell rung on the approach of the train; but some of them were not quite sure of the time, or the place where the train was, when they heard the sounds. None of defendants' witnesses saw the accident except the engineer and fireman. None of the others gave any special reason for looking or listening for the train at that particular time.

The evidence is in serious and substantial conflict. The two

versions of the circumstances surrounding the collision are diametrically opposed to each other. It is impossible to reconcile them. The train either gave the required statutory signals or it did not. The evidence of plaintiff's witnesses is not incredible. The resolution of the conflict was for the jury. It is manifest that the jury accepted the statements of plaintiff's witnesses as true, and rejected those of defendants' witnesses. Neither the trial court nor this Court may usurp the jury's role as a trier of facts and the weigher of testimony. *Adams* v. *Allen*, 202 Va. 941, 946, 121 S. E. 2d 364.

The present case is somewhat similar in point of facts to *State and City Bank and Trust Company, Administrator, etc.* v. *Norfolk and Western Railway Company*, 144 Va. 185, 131 S. E. 331; *The Virginian Railway Company* v. *Haley*, 156 Va. 350, 157 S. E. 776; and *The Virginian Railway Company* v. *Craighead*, 193 Va. 300, 68 S. E. 2d 647.

Defendants rely principally upon *Railway Company* v. *Barden*, 200 Va. 98, 104 S. E. 2d 13, and a line of cases involving facts similar to those in that case. Each may be distinguished from the factual situation presented in this case.

In the *Barden* case, *supra*, all of the testimony of the witnesses for the plaintiff was negative. They testified simply that they did not hear the signals given; but they did not say that the signals were not given. That case differs from the present, in that here witnesses for the plaintiff did not testify merely that they did not hear the signals given; but, on the other hand, declare that the signals were not given.

The plaintiff is before us as a successful litigant, armed with a jury verdict that has been approved by the trial judge. All conflicts in the evidence have been resolved in her favor, and there is credible evidence to support the verdict. The judgment complained of is, therefore, affirmed.

*Affirmed.*