Leslie L. JONES, Appellee,

v.

The **CHESAPEAKE AND OHIO RAILWAY COMPANY, Appellant.**

Leslie L. JONES, Appellant,

v.

The **CHESAPEAKE AND OHIO RAILWAY COMPANY, Appellee.**

Nos. 10590, 10591.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 2, 1966.

Decided Dec. 8, 1966.

Aubrey R. Bowles, Jr., Richmond, Va. (Aubrey R. Bowles, III, and Bowles & Boyd, Richmond, Va., on brief), for Chesapeake & Ohio Ry. Co.

J. Westwood Smithers and Archie O. Wells, Richmond, Va. (Wells, Smithers & Bradshaw, Richmond, Va., on brief), for Leslie L. Jones.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge.

A brakeman in the employ of the Chesapeake & Ohio Railway brought an action under the Federal Employers' Liability Act to recover damages for personal injuries, including the amputation of his left leg below the knee, suffered when he was struck by a boxcar in the railroad's Fulton Yard at Richmond, Virginia. The District Court, sitting without a jury, gave judgment for the plaintiff, Leslie L. Jones, in the amount of $97,660.00 on its finding that the injuries were solely caused by the railroad's negligence in operating a diesel engine without ringing the warning bell or maintaining a proper lookout.[1] The railroad appeals, assigning as error the District Court's exoneration of Jones from contributory negligence and its finding that the bell was not rung. The appellant concedes that there is substantial evidence to support the finding that the lookout was inadequate, and seeks only to reduce the judgment by operation of the comparative negligence rule, which prevails in F.E.L.A. cases. 45 U.S.C.A.

---

[1] The complaint also alleged a violation of the Safety Appliance Act, 45 U.S.C.A. §§ 1–23, in that the warning bell was defective and could not be rung. The District Judge did not make numbered findings of fact or conclusions of law, but delivered a thorough opinion from the bench in which he stated that "[i]t was negligence for the engineer to continue operating the train *knowing that the bell was defective.*" (Emphasis added.) A specific conclusion of law that the Safety Appliance Act was therefore violated was omitted, however, and the parties have joined issue over whether we can supply this finding on the record before us. Such a finding is relevant because violation of the Act precludes consideration of the employee's contributory negligence in mitigation of damages. 45 U.S.C.A. §§ 23, 53. Since we affirm the District Court's finding that Jones was not guilty of contributory negligence, it is unnecessary for us to resolve this issue.

§ 53. Jones cross-appeals on the ground that the damages awarded for his non-pecuniary losses are inadequate.[2]

The factual setting of the accident is not complex. On February 11, 1964, while Jones, in the course of his employment, was walking west between tracks 7 and 8, a diesel engine and boxcar facing east were on track 7, awaiting clearance to proceed through a switch further down the track. Passing the engine he noticed that both it and the boxcar were stationary. Continuing on his journey, he took the precaution of looking back twice within a space of 145 or 150 feet, each time noting that the engine and boxcar were at rest. Jones then reached one of the many cross-over switches located throughout the yard and designed to facilitate railroad operations by enabling trains to be transferred from one track to another. The switches, approximately three feet high, cannot be stepped over conveniently, and railroad employees customarily walk around them. The plaintiff could not negotiate the switch to his right because of the overhang of a diesel engine standing on the adjacent track 8. He therefore prepared to walk to his left, and was in the process of turning around a third time to make sure that the way was clear, when he was struck by the boxcar, which was then being pushed along track 7 by the diesel engine. As a result he sustained fractures of the left thigh and right hip socket, a dislocated right hip, lacerations to the face and two toes of the right foot, as well as injuries requiring the leg amputation.

■ The chief argument of the railroad is that under Virginia law the District Court committed error in finding that the warning bell was not sounded. Supporting the finding were six witnesses who testified at the trial that the bell was not ringing when the accident occurred, while two testified that it was ringing at the critical time. The railroad argues that according to the Virginia decisions, the positive testimony of a credible witness to the occurrence of an event outweighs the merely negative testimony of other witnesses that they did not see or hear the event.[3] Assuming the credibility of the witnesses who testified for the railroad, the cited cases, as we read them, do not mandatorily require decisive weight to be given their testimony. While a mechanistic application of the terms positive and negative might produce the result appellant advocates, the Virginia decisions themselves have declared that in applying the rule negative testimony may, in appropriate circumstances, be considered positive. Explicitly, in Virginian Ry. Co. v. Haley, 156 Va. 350, 157 S.E. 776 (1931), the court stated:

> "[w]here a witness testifies that he did not hear a particular sound at a particular time and place, if the evidence shows that he had a good opportunity to hear it, and that the circumstances were such that it is probable that he would have heard it, if it had occurred, or that his attention was in some way drawn to the matter controverted, his testimony is positive, rather than negative * * *." 156 Va. at 372, 157 S.E. at 783. See also State & City Bank & Trust Co. v. Norfolk & Western Ry. Co., 144 Va. 185, 135 S.E. 331 (1926).

This reasoning rests in sound common sense. Were the rule not so qualified, the trier of fact would invariably be foreclosed from finding that an event did not occur whenever any testimony to the contrary was adduced, regardless of the fact trier's appraisal of the relative credibility

2. In itemizing the components of the $97,-660.00 verdict, the District Court included $23,000.00 for "his past and future pain and suffering, his disfigurement, mental anguish, and humiliation from his disfigurement * * *."

3. See Southern Ry. Co. v. Barden, 200 Va. 98, 102–103, 104 S.E.2d 13, 15–17 (1958),

and cases cited therein. In *Barden*, however, the court was careful to note that "the three witnesses who testified that they did not hear the statutory signals did not have their attention drawn to the train until it was too late, or were not in a position to effectively hear and observe whether the signals were given." 200 Va. at 104, 104 S.E.2d at 17.

and reliability of the witnesses. If the event *in fact* did not happen, the mistaken testimony of a positive witness could never be successfully impeached by the accurate testimony of a negative witness, however cogent and persuasive. It would be as illogical to insist on a "positive-negative" rule as a universal solvent of factual disputes as to base findings on an undiscriminating head-count of witnesses on each side of a controversy, in disregard of their credibility or the content of their testimony.

In the present case, each of the six witnesses who testified that the bell did not sound was in proximity to the scene of the accident and had a motive to listen for the ringing of a bell. Four of them were standing in the cab of the engine on track 7 and were intimately involved in the operation of the diesel. A fifth witness, who actually saw the accident, was working in the yard and testified that he would have heard the bell had it been sounded since he was listening for any warning to keep out of the way. The sixth witness was the plaintiff himself, who was working in the immediate vicinity of the diesel and presumably would keep himself attentive for any warning signal. In addition, there was testimony by the crew of the diesel that while the warning bell was operating when the engine left the roundhouse, the mechanism froze when exposed to the cold weather in the yard and was not functioning at the time of the accident. The engineer reported this fact when he turned the engine in at the roundhouse before going off duty. Despite the earnest emphasis by counsel for the railroad on the functioning of the bell both before and about two hours after the accident, we think this evidence perfectly consistent with the District Judge's view that the bell initially froze upon exposure to the elements and defrosted some time later. The cumulative weight of the testimony strongly supports the District Court's finding that the bell was not and could not be rung at the time of the accident.[4] While the contrary inference was cogently argued both at trial and in our court, we cannot say that the District Court's finding is clearly erroneous. We note, in passing, that if the Virginia law of evidence dictated reversal of the trial court's finding of fact, a serious question would arise whether a federal court applying a federal statute is bound by a state procedural rule whose effect is to withdraw from the trier of fact the resolution of issues created by the conflicting testimony of equally credible witnesses.[5]

The appellant also advances several arguments designed to show that as he walked between the tracks, Jones placed himself in a dangerous position too close to track 7 and that he was thereby guilty of contributory negligence as a matter of law. We have studied the record with care and considered in detail the contentions meticulously marshalled by counsel. We conclude, however, that the evidence presented a purely factual issue as to which the trier of fact could with reason agree or disagree with the railroad's contention. See Rogers v. Missouri Pacific R. R. Co., 352 U.S. 500, 506,

---

4. Cf. Poole v. Hassell, 206 Va. 97, 141 S.E.2d 707 (1965), where the court distinguished between testimony that certain signals were not heard and testimony that the signals were not given, and held that *Barden*, supra note 3, did not apply to the latter. In our case, the engineer of the diesel on track 7, whose duty was to insure that the warning bell was ringing, testified that during the movement which culminated in the accident, he *"had the bell on, but it just wouldn't ring."* (Emphasis supplied.) Several of plaintiff's other witnesses testified that they were "positive" that the bell was not ringing, not merely that they had not heard it. The force of this testimony is sufficient to take the case out of the operation of *Barden*.

5. See Dice v. Akron, C. & Y. R.R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), where the court indicated that state law does not control the incidents of an employee's right to recover against his employer for negligently inflicted injuries under the F.E.L.A. 342 U.S. at 361, 72 S.Ct. 312. Cf. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

77 S.Ct. 443, 1 L.Ed.2d 493 (1957). In these circumstances there is no basis for interfering at the appellate level with the District Court's resolution of the issue of contributory negligence, and hence nothing on which the comparative negligence rule can operate. Likewise, with respect to the plaintiff's cross-appeal on damages, while a reasonable argument could be made for a more liberal award, considering the serious curtailment in his future activities and the expected persistence of his pains, there is here no warrant for setting aside as insufficient the District Court's specific allowance for non-pecuniary losses or the total award. The judgment of the District Court is

Affirmed.