Gordon BESSE, Plaintiff,

v.

BURLINGTON NORTHERN, INC., a
Delaware corporation, Defendant.

Civ. No. 4–75–148.

United States District Court,
D. Minnesota,
Fourth Division.

July 25, 1978.

Howard Hill, Yaeger & Yaeger, Minneapolis, Minn., for plaintiff.

H. K. Bradford, Jr., St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court for consideration of plaintiff's motion for a new trial on the issue of damages only or, in the alternative, for a new trial on all issues.

Plaintiff Gordon Besse brought suit against Burlington Northern, Inc., to recover damages allegedly sustained as a result of defendant's negligence and defendant's violation of the Federal Safety Appliance Act, 45 U.S.C.A. §§ 2, 51, 53. Trial was held from January 12 through 20, 1978. In its answers to the Special Verdict interrogatories the jury found that Gordon Besse was 37½ percent causally negligent, that defendant Burlington Northern, Inc. was 62½ percent causally negligent and that defendant violated the Federal Safety Appliance Act, causally contributing to plaintiff's injuries. Judgment was rendered on the jury's award of $225,000.00.

Plaintiff's injuries arose out of an incident which occurred on March 26, 1975, in defendant's switching yard in Grand Forks, North Dakota. At that time, Besse was employed by the Burlington Northern as a yard switchman. In the early morning of the day in question, Besse was working near track number 20 in the defendant's yards. Besse alleges that one or more of the defendant's railroad cars had defective couplers, which, among other things, required Besse to go between the railroad cars to operate the coupling devices. Besse asserts that when he was between the railroad cars, the employees of the railroad negligently caused and permitted him to be run over by several of the cars. As a result, Besse's right leg had to be amputated below the knee and his left leg was injured.

Plaintiff now moves for a new trial on the grounds that prejudicial errors of law were made during the course of the trial and that the damages are inadequate as a matter of law, having surrendered his contention that the amount of damages awarded by the jury is contrary to the clear weight of the evidence.

A new trial is appropriate only if manifest injustice results from an erroneous admission or exclusion of evidence or an error in the instruction of the jury. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 186 (8th Cir. 1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

### Opinion Evidence as to Future Productivity Increases

Plaintiff first contends that the Court erred in refusing to permit his expert economist to testify as to his opinion of the productivity wage increases plaintiff would have enjoyed had he been able to continue working as a yard switchman for the railroad. In his Motion for New Trial, plaintiff states that his expert, Dr. Edward M. Foster, a Professor of Economics at the University of Minnesota, would testify that plaintiff would have received annual productivity wage increases of 2.9% and that such increases are clearly distinguishable from inflationary or cost-of-living increases. In the offer of proof at trial, plaintiff asserted that Dr. Foster would testify that plaintiff's calculated earnings if he worked to the age of 65 would be increased by annual productivity wage increments of 2% on the basis of the record of annual productivity gains within the economy as a whole.

Dr. Foster did, in fact, testify as to what Besse's future projected wage loss would be, based upon the assumption that Besse's future average annual earnings as a switchman would have been $18,006.00, even

though Besse had never earned an annual wage of more than $13,579.00 prior to the year of the accident.

This Court concludes that the evidence of future productivity increases, other than as Dr. Foster was allowed to testify that Besse's future annual earnings as a switchman would have reached $18,006.00, was properly excluded on the ground that it constituted a projection of future productivity gains for the economy as a whole, akin to opinion testimony of a mathematical projection of future inflationary trends, which is considered too speculative and conjectural to admit as evidence regarding loss of earnings. *Johnson v. Serra,* 521 F.2d 1289, 1293 (8th Cir. 1975). In this case particularly, there was no assurance that the proffered evidence had sufficient probative value to overcome the danger that it would influence the jury to assess damages on an improper basis. *Id., Riha v. Jasper Blackburn Corp.,* 516 F.2d 840, 843-44 (8th Cir. 1975); *Bach v. Penn Central Transportation Co.,* 502 F.2d 1117, 1122 (6th Cir. 1974). Dr. Foster intended to base his opinion of future productivity wage increases for a railroad yard switchman on the past performance of the economy as a whole. Yet no data was presented to the Court to demonstrate that there was any correlation between the past average annual productivity wage increases on a national level and productivity wage increases, if any, paid to defendant's employees. Nor was any data disclosed to the Court establishing past productivity increases in the work of a Burlington Northern switchman which were reflected in his wages. Further, there was no verifying information concerning the predicted likelihood of future productivity gains in the work of a yard switchman, and no other basis for the assurance that there would be a future correlation between such gains and the wages of a switchman. Given the absence of a foundation to demonstrate the reliability of the evidence, it was properly excluded as too speculative and conjectural. See *Riha v. Jasper Blackburn Corp.,* 516 F.2d at 843–44, n. 4, 845.

*Instructions: Inflation and the Discount Rate*

Plaintiff contends that the Court committed errors of law by refusing to instruct the jury in accordance with certain of plaintiff's proposed instructions. The alleged errors essentially concern the question of the proper factors to be considered by the jury in measuring damages in a personal injury action brought under the Federal Employers' Liability Act.

As background, it should be noted that during the trial plaintiff contended that his expert witness, Dr. Edward M. Foster, Professor of Economics, should be able to testify as to his prediction of future mathematically calculated annual trends of inflation. Plaintiff further urged the Court to permit Dr. Foster to testify that the return on the investment of a personal injury award would only exceed the inflation rate by 1% and that this 1% differential should be taken into account when the plaintiff's damages were discounted to present value. It was anticipated by plaintiff that Dr. Foster's testimony would follow the theory of his testimony discussed by the Minnesota Supreme Court in *Ossenfort v. Associated Milk Producers, Inc.,* 254 N.W.2d 672, 683–84 (1977).

The proposed testimony was held to be clearly inadmissible due to its speculative and conjectural nature pursuant to the law of this Circuit set forth in *Riha v. Jasper Blackburn Corp.,* 516 F.2d 840, 843-44, n. 4, 845 (8th Cir. 1975) and *Johnson v. Serra,* 521 F.2d 1289, 1293 (8th Cir. 1975). Plaintiff does not contest the propriety of this evidentiary exclusion any longer. Nevertheless, plaintiff now contends that the Court erred as a matter of law in refusing to instruct the jury that in the process of discounting the damages to present value, the jury could consider any off-setting effect that inflation or increases in the cost-of-living might have in the future on the value of the damage award. Specifically, plaintiff argues that the Court erred in failing to give the following instruction, Plaintiff's Number 19:

In considering the impairment of plaintiff's future earning capacity and in arriving at a sum of money that will compensate plaintiff for such loss, you may also consider the effect of continuing inflation and any off-setting effect such continuing inflation may have in connection with the process of discounting such future loss to its present value.

■ Since this instruction does not discuss the off-setting effect of cost-of-living increases and since the plaintiff did not otherwise request it, plaintiff may not now assign as error the Court's failure to give such an instruction. Rule 51, F.R.Civ.P. *Wichmann v. United Disposal, Inc.,* 553 F.2d 1104, 1106 (8th Cir. 1977). Moreover, this Court again takes note of the fact that Dr. Foster did base his projection of Besse's future projected wage loss on the assumption that Besse's future average annual earnings as a switchman would have been $18,006.00, even though Besse had never earned more than $13,579.00 as an annual wage prior to the year of the accident. Thus, Dr. Foster must have taken account of undisclosed variables such as future wage increases, or cost-of-living increases in arriving at his calculation of Besse's future average annual wage.

■ With respect to the matter of the off-setting effect of inflation, Dr. Foster was allowed to testify about past trends of inflation and to testify that in his opinion, inflation would occur in the future. Furthermore, despite the continuing objection of defense counsel, the following testimony concerning the relationship between inflation and interest rates was made by Dr. Foster during the trial:

Plaintiff's Counsel: Is the current interest rate, such as the 8% interest rate, related to inflation?

Dr. Foster: Yes, it is.

Plaintiff's Counsel: Do interest rates follow inflation or vice versa?

Dr. Foster: Interest rates follow inflation, not vice versa.

Plaintiff's Counsel: Interest rates do follow inflation?

Dr. Foster: Yes.

Plaintiff's Counsel: As inflation increases do interest rates go up?

Dr. Foster: Yes.

Plaintiff's Counsel: As you have deflation, will interest rates then go down?

Dr. Foster: Yes.

Counsel were also permitted to argue about the possible future erosive effects of inflation on the value of a personal injury award of damages. But, in accordance with the law of this Circuit and the exclusion of testimony of mathematical projections of future inflationary trends, the Court declined to give Plaintiff's Instruction Number 19.[1] To do so would permit the substi-

---

1. The Court delivered the following instruction regarding the present worth of future loss:

In fixing the amount of damages, as I have mentioned, you will fix the amount of plaintiff's damages irrespective of how you answer the other questions in this case. In doing so, if you should find that the evidence in the case establishes either: (1) a reasonable likelihood of future medical expense, or (2) a reasonable likelihood of loss of future earnings, then it becomes your duty to ascertain the present worth in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date.

Under these circumstances, the result is that the plaintiff will in effect be reimbursed in advance of the loss, and so he will have the use of money which he would not have received until some future date, but for the verdict.

In order to make a reasonable adjustment for the present use, interest free, of money representing a lump-sum payment of anticipated future loss, the law requires that the jury discount, or reduce to its present worth, the amount of the anticipated future loss. This is done by taking (1) the interest rate or return which the plaintiff could reasonably be expected to receive on an investment of the lump-sum payment, together with (2) the period of time over which the future loss is reasonably certain to be sustained; and then reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return, if invested at such rate of interest over such future period of time; and include in the verdict an award for only the present-worth—the reduced amount—of the total anticipated future loss.

Court's Instruction No. 32; § 85.13 Devitt & Blackmar, Federal Jury Practice & Instructions (3d ed. 1977).

tution of an improper instruction for improper testimony and would constitute reversible error. *Johnson v. Serra,* 521 F.2d 1289, 1293 (8th Cir. 1975).

While the Court of Appeals for the Eighth Circuit has not directly addressed the question of the propriety of instructions or evidence concerning the calculation of the off-setting effect of future inflationary trends on personal injury damages in Federal Employer Liability cases, it has made its views about the subject quite clear. In *Johnson v. Serra,* 521 F.2d at 1293, the Court of Appeals reversed a District Court for permitting testimony from Dr. Foster projecting future inflationary trends on the decedent's lost future earnings under Minnesota's wrongful death statute, explaining,

> If the instant case were a Jones Act, FELA or other federally created claim, the evidence of future inflationary trends and their impact on the value of the dollar would probably be considered too speculative and conjectural to be admitted. The federal circuits that have faced the issue in cases involving federally created claims, governed by federal rather than state law, have for the most part rejected the testimony, jury instructions or trial court consideration of future inflationary trends in damage assessment. *Id.,* 521 F.2d at 1295–96. See *id.,* nn. 16, 17 and cases cited therein.

The Eighth Circuit has also cited with approval the FELA case of *Bach v. Penn Central Transportation Co.,* 502 F.2d 1117, 1122 (1974) in which the Sixth Circuit held that it was error to admit testimony from an economist regarding his estimate of future inflation because the predictive abilities of economists have not advanced so far that they can forecast with any certainty the existence and rate of inflation for the next thirty years. *Riha v. Jasper Blackburn Corp.,* 516 F.2d 840, 844–45. In *Riha v. Jasper,* in language which must be considered significant and persuasive in dealing with certain of the issues in this case,

the Court of Appeals explained its thinking concerning the difficulty with allowing a jury to consider the future effect of inflation on damage loss:

> There are of course many deficiencies in our present system for awarding money damages for future loss. . . . In the first place, there exists no certainty of continued loss—an individual might die or in later years enter another vocation earning more money. To attain a more exact method of compensation we could have open-end judgments whereby damages would be assessed anew on an annual basis. In this manner taxes, inflation or deflation and the certainty of mitigated loss could be more accurately measured. Yet it should be obvious that such a system would be unmanageable and would serve few interests. See *Frankel v. United States,* 321 F.Supp. 1331, 1340-41 (E.D.Pa.1970). Therefore the law must recognize compensation in terms of approximate damages based upon proof of loss demonstrated with a reasonable degree of certainty. If the present value of the dollar is diminished in purchasing power, this fact may be considered by a jury and may justify as well a court rejecting comparisons of past awards for similar injuries when considering excessiveness of an award.
>
> However, where the evidence focuses upon possible future inflation affecting future loss, projected over a person's life expectancy, it would appear inadmissible not only because it is speculative and uncertain, but because it opens up a myriad of collateral and remote considerations.
>
> Proof as to possible income tax, future inflation, attorneys fees and cost of litigation are all generally held inadmissible. Yet it cannot be denied that all of these elements relate directly or indirectly to the computation of an injured party's actual loss. Once the door is opened to one contingency, it is necessary to consider as well all other factors with might affect

actual loss. The primary reason for their exclusion is that they are not in a manageable form of proof. . . . Similarly, in allowing a jury to consider possible future inflation rates, the defendant would have the right to show by other experts that in inflationary times there would be a corresponding increase in interest rates affecting investments and thereby raise the discount rate to be considered in computing present value. Instead of assisting jurors to render a verdict of reasonable compensation, collateral considerations of income tax and inflation will inject into trials confusing and conjectural mathematics and assumptions and as well will create unmanageable trials. *Id.,* 516 F.2d 843-44, n. 4.

Accordingly, it would not have been proper to instruct the jury to consider either the effect of continuing inflation on plaintiff's lost earnings or any off-setting effect such inflation might have on the return of investment on the damage award.

■ In his Motion for New Trial, plaintiff also contends that the Court erred in failing to instruct the jury that an award for future pain and suffering need not be discounted to present value. The record reflects that defendant's attorney specifically requested that the jury be instructed that an award for future pain and suffering should be reduced to present value. Plaintiff opposed defendant's request on the grounds that damages for pain, suffering, and disability, past, present and future, are considered general damages and are not subject to discount to present value. Defendant's request was denied and defendant does not challenge the Court's ruling.

The Eighth Circuit has specifically approved the instruction given by the Court, now set forth in Devitt & Blackmar, Federal Jury Practice & Instructions § 85.13 (3d ed. 1977), regarding the discounting of future medical expenses and earnings to

present value. *See* note 1, *supra*. *Beanland v. Chicago, Rock Island & Pacific Railroad Co.,* 480 F.2d 109, 115 (8th Cir. 1973).[2] In the instant case, the jury was not instructed that it was precluded from considering possible future reduction in the value of money due to inflation in assessing the award for future pain and suffering. In addition, plaintiff's expert was permitted to testify about past inflationary trends in general and to testify that in his opinion inflation would occur in the future, and plaintiff's attorney was allowed to argue to the jury the effects of inflation on the value of a personal injury award of damages. Thus, the jury was not prohibited from considering the possible effects of future inflation on the value of the dollar in arriving at a sum to compensate the plaintiff for his future pain and suffering.

As an additional error of law, plaintiff asserts that the Court erred in permitting a discount table to go to the jury. Plaintiff does not quarrel with the validity or accuracy of what is stated in the table, but argues that the matter of discounting to present value was conclusively attended to by plaintiff's expert economist on cross-examination, and that the discount table would be confusing to the jury.

■ Of course, since plaintiff's expert, Dr. Foster, referred to a similar discount table when testifying in court he could have been required to disclose the table he was using during cross-examination. Rule 705, Federal Rules of Evidence. Judicial notice of the present value table is appropriate pursuant to Rule 201, Federal Rules of Evidence. The Court of Appeals has approved the use of the jury instruction drafted by Devitt & Blackmar in which the Court explains that reduction to present value is accomplished by use of judicially noticed present worth tables. *Beanland v. Chicago, Rock Island & Pacific Railroad Co.,* 480 F.2d at 115.[3] Finally, the Court expressly in-

---

**2.** This instruction was numbered § 78.13 in the Second Edition, Devitt & Blackmar, Federal Jury Practice (1970).

**3.** The last paragraph of the approved instruction, now § 85.13 Devitt & Blackmar (3d ed. 1977) provides:

formed the jury that it was under no obligation to use the present worth table and that it could consider interest rates which were either higher or lower than those used in the table.[4] Thus, the jury was free to accept the figures proffered by Dr. Foster, but under no obligation to do so. *Novak v. Gramm,* 469 F.2d 430, 433 (8th Cir. 1972). The discount table was properly sent to the jury room.

Plaintiff is not entitled to a new trial absent a showing of prejudicial error in the admission or exclusion of evidence or in the instructions given to the jury. *Fireman's Fund Ins. Co. v. Aalco Wrecking, Inc.,* 466 F.2d 179, *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (8th Cir. 1972). Since there has been no error here it would constitute an abuse of discretion to grant the motion. *Reed Bros., Inc. v. Monsanto Company,* 525 F.2d 486 (8th Cir. 1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 645 (1976).

*Inadequate Damages as a Matter of Law*

■ Plaintiff contends that the award of damages is inadequate as a matter of law.

In presenting his argument, plaintiff has based his calculations on the testimony of Dr. Foster that Besse's unreduced loss of railroad wages, assuming a work expectancy to age 65, would be $580,639.00, and that the unreduced replacement costs for the artificial limb over Besse's life expectancy would be $17,980.00. Plaintiff has further assumed that if Besse continues to work 40 hours per week at his present job as a janitor, his gross earnings loss would be in the amount of $345,881.00, based on the calculations of Dr. Foster. Besse's past wage loss is calculated as follows:

| | |
|---|---|
| $ 45,646.00 | gross loss of earnings to date of trial |
| − 2,478.02 | janitorial earnings to date of trial |
| $ 43,167.98 | net past wage loss |

Dr. Foster calculated the present value of Besse's future wage loss to be $127,687.00 and the present value of the artificial limb replacement to be $5,785.00. Thus, Besse's total loss of earnings and medical expenses was calculated by plaintiff as follows:

| | |
|---|---|
| $127,687.00 | present value of future wage loss |
| 5,785.00 | present value of future limb replacement |
| 43,167.98 | net past wage loss |
| $176,639.98 | present value of future wage loss and future limb replacement |

Based on the above calculations of his expert, plaintiff contends that the amount of the verdict of $225,000.00, less the present value of the total loss of earnings and medical expense of $176,639.98, yields a difference of $48,360.02 to compensate plaintiff for his past and future damages of pain, suffering and disability. It is this aspect of the verdict which plaintiff contends is grossly inadequate as a matter of law in view of plaintiff's injuries.

The Court of Appeals for the Eighth Circuit presently adheres to the standard first elucidated in *Solomon Dehydrating Company v. Guyton,* 294 F.2d 439, 447–48 (1961), *cert. denied,* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961), that a new trial on the grounds of an inadequate or excessive verdict is not mandatory except in those rare situations where there is a "plain injustice" or a "shocking" or a "monstrous" result. The standard is consistently applied in this

As already explained to you, this computation is readily made by using the so-called "present-worth" tables, which the Court has judicially noticed and received in evidence in this case.

4. The Court's instruction read as follows:
   This computation may be assisted by using a so-called "present-worth" table, which the Court has judicially noticed and received in evidence in this case and which will be a part of the exhibits which are delivered to you. You should make no inference, and none is inferred by me or by the admission of this table, that the interest rates used in the table are the only ones you can consider. You may consider interest rates either higher or lower than those used in the table. Further, you are under no obligation to use the present worth table at all in arriving at the present worth in dollars of any future damages and may entirely use your own judgment in arriving at the present worth of the damage figure.

Circuit. *See, e. g., Novak v. Gramm,* 469 F.2d 430, 434-35 (8th Cir. 1972); *Handi Caddy, Inc. v. American Home Prod. Corp.,* 557 F.2d 136, 141 (8th Cir. 1977).

It is further recognized that "[t]here is no precise or exact measuring stick for calculating general damages for pain and suffering. Although the jury should not pick a figure out of the air, exact compensation for pain and suffering is impossible." *Taken Alive v. Litzau,* 551 F.2d 196, 198 (8th Cir. 1977). The case before the Court is not one in which the jury failed to consider compensation for pain and suffering; the jury returned a general verdict in excess of the amount of out-of-pocket losses claimed by the plaintiff. *Id.,* 551 F.2d at 199. *Brown v. Richard H. Wacholz, Inc.,* 467 F.2d 18, 21 (10th Cir. 1972).

Plaintiff states in his brief to the Court that there is no inference that there was a compromise or sympathy verdict, nor that the jury was influenced by passion, prejudice or sympathy. Nonetheless, plaintiff argues that the only way the jury could reach its verdict was by misapplication of the law. Specifically, plaintiff claims that the jury must have (1) reduced the award of general damages to present value, or (2) determined that a lump sum award of $200,000.00 invested in government bonds at 8% interest would yield $16,000.00 annually without need to use the principal, and consequently $225,000.00 would be an adequate award. Of course, plaintiff's argument is based on conjecture. It is equally possible and more likely that the jury calculated the present value of the total loss of earnings and medical expenses as plaintiff did in the figures set forth above and then determined that $50,000.00 would adequately compensate Besse for his past and future losses for pain and suffering, without discounting that amount. The jury was not instructed to reduce the award for pain and suffering to present value. It was only instructed to so discount the awards for loss of earnings and medical expenses. But, even assuming what we cannot know, that the jury did misapply the law, "[i]t is well settled that a jury's misunderstanding of testimony, misapprehension of law, errors in computation or improper methods of computation, unsound reasoning or other improper motives cannot be used to impeach a verdict. These matters all inhere in the verdict itself." *Chicago, Rock Island and Pacific Railroad Co. v. Speth,* 404 F.2d 291, 295 (8th Cir. 1968).

Thus, it is equally irrelevant, if it were somehow found to be a valid characterization of the jury's deliberations as plaintiff contends, that

> [t]he jury obviously paid no attention to plaintiff's argument that it should consider continuing inflation as an off-set against the 8% interest discount rate. Similarly, it gave no consideration to the likelihood of continued railroad wage increases as testified to by Doctor Foster.

In the case of *Novak v. Gramm,* 469 F.2d 430, 432-33 (8th Cir. 1972) plaintiff moved for new trial on the grounds of an inadequate jury verdict, relying almost exclusively on the discrepancy between the jury's verdict and the testimony of plaintiff's expert economist regarding the computation of pecuniary damages. The action was one for the wrongful death of a passenger in an automobile struck by defendant's truck. Plaintiff contended that the undisputed testimony of the expert economist established the minimum amount of damages as $193,-795.00. The jury, however, returned an award of $35,000.00 in favor of the decedent. The Court of Appeals rejected plaintiff's argument that the damages were "shockingly" low on the ground that they had been proven to a mathematical certainty by plaintiff's economist:

> The technique used by the expert witness was to add plaintiff's projected lifetime net earnings and the replacement cost of her normal household duties, and then reduce the total to its present dollar value. Such a computation may have value for economists, but it is not an indisputable measure of legal damages. The jury was not bound to accept the assumptions upon which these computations were based. The mechanical extrapolation of these assumptions into

quantified totals was, therefore, merely evidence for the jury to consider, not proof of a mathematical certainty by which they were bound. *Novak v. Gramm*, 469 F.2d at 433.

By the same token, in the instant case the jury was not bound to accept Dr. Foster's testimony regarding the likelihood of continuing railroad wage increases, nor to accept plaintiff's contention that there will be future inflation which will offset plaintiff's return on investment.

Further, the jury was not required to accept the assumptions upon which Dr. Foster's testimony was based nor his opinions as to the value of the components of his calculations, particularly of plaintiff's future wage loss. Defendant notes, for example, that Dr. Foster's calculations of future wage loss were based on the assumptions that Besse would receive average annual earnings of $18,006.00 and that he would work until the age of 65. However, the highest salary ever earned by Besse was in 1974, when he was paid $13,579.00. In addition, Besse might well have retired at the age of 60, as was true of Mr. Lyle Nelson, one of plaintiff's witnesses, who was formerly a switchman with the Burlington Northern. Thus the jury could have reasonably disregarded the testimony of Dr. Foster as to Besse's future wage loss and arrived at an undiscounted total wage loss figure considerably below the $580,-639.00 figure which resulted from Dr. Foster's assumptions.

The figure of $127,687.00, said to represent the present value of plaintiff's future wage loss, was derived as follows. Dr. Foster calculated that Besse would earn a total of $234,758.00 if he worked forty hours per week as a janitor until age 65. The difference between Besse's gross future wage loss as a switchman, estimated by Dr. Foster to be $580,639.00, less his anticipated earnings as a janitor is $345,-881.00, which yields a figure of $127,687.00 when it is reduced to its present value by an investment rate of 8%. Of course the present value of the future wage loss would be lower if the jury used, for example, a 9%

discount rate and concluded that plaintiff's anticipated future annual income would approximate $14,000.00 or $16,00.00. Thus, if the jury found the present value of the future wage loss to be $100,000.00 it would have included $75,000.00 in its award for pain and suffering, according to plaintiff's calculations set forth above.

To take this reasoning one step further, plaintiff presumes that the jury had to accept evidence that plaintiff's future actual earnings would amount to no more than $234,758.00 as a janitor at the Devils Lake High School. This assumption ignores the possibility of a wage increase in the future. It also disregards the evidence before the jury regarding alternative job possibilities for Besse and Besse's job preferences. The treating orthopedic surgeon, Dr. Ben Clayburgh, testified that Besse was physically capable of engaging in assembly line work as well as custodial work, as did Dr. Donald F. Barcome, Chief of Rehabilitation, Medical Rehabilitation Center, Grand Forks, North Dakota, who supervised Besse's rehabilitation. Elaine Bohnet, the Vocational Counselor who worked with Besse at the Medical Rehabilitation Center testified that Besse was capable of performing assembly line work. There was also testimony that there are not many opportunities for factory work in the area near the Besse home in Devils Lake, North Dakota. But Besse, who is living with his parents, prefers to live in that area and prefers janitorial work. In addition, his father is a janitor at the high school where Besse is presently employed.

In light of this evidence, the jury was not bound by Dr. Foster's prediction of what Besse's future earnings as a janitor at the Devils Lake High School would be. Consequently the jury could have determined that the aggregate of Besse's actual future earnings would be greater than $234,758.00, and that the present value of his future wage loss was below the figure proffered by plaintiff.

Although plaintiff's motion is grounded on the inadequacy of the damage award as a matter of law, plaintiff's arguments go to

the weight of the evidence.[5] The Court notes that the amount of damages to be awarded in a personal injury action is ordinarily a question for determination solely by the jury. It is generally recognized that if the evidence is such that reasonable persons may differ as to the result, the Court will not interfere with the function of the jury as the trier of fact. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 at 186-87 (8th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973).

Plaintiff cites *Seaboard Coastline R. R. Co. v. McKelvey*, 270 So.2d 705 (Fla.1972) and *DeSantis v. Parker Feeders, Inc.*, 547 F.2d 357 (7th Cir. 1976) in support of his claim that damages are inadequate as a matter of law, but his reliance on these cases is misplaced. Both involved challenges by defendants to the alleged excessiveness of verdicts. While the standard for determining whether a verdict is excessive or inadequate as a matter of law is the same one, the conclusions are not transferable. A determination that a verdict in one case was not excessive does not establish a rule for what the minimum award of damages should be in another. See *Perry v. Bertsch*, 441 F.2d 939, 944 (8th Cir. 1971).

Unlike *Seaboard Coastline R. R. Co. v. McKelvey, supra*, and *DeSantis v. Parker Feeders, Inc., supra; Jones v. Chesapeake and Ohio Railway Company*, 371 F.2d 545 (4th Cir. 1966), involved a cross-appeal by a plaintiff contending that his damages were inadequate as a matter of law. The action was brought under the Federal Employers Liability Act by a brakeman to recover damages for personal injuries including the amputation of his left leg below the knee, suffered when he was struck by a boxcar in the defendant's railroad yard. The Court sitting without a jury, awarded damages in the amount of $97,660.00, including $23,-000.00 for plaintiff's past and future pain and suffering, his disfigurement, mental anguish, and humiliation from his disfigurement and the Fourth Circuit summarily concluded that there was no warrant for setting aside the District Court's allowance for general damages or the total award. *Id.*, 371 F.2d 547, n. 2, 549.

There is nothing in the instant case to suggest that either the estimated award for pain and suffering or the general verdict was not arrived at through the proper and conscientious consideration of this jury. Plaintiff voluntarily states that there is no inference of a compromise or sympathy verdict and no indication that the jury was influenced by passion, prejudice or sympathy. Further, plaintiff is satisfied that the jury strictly applied the instructions and law as given by the Court, and this Court concludes that those instructions correctly set forth the law of this Circuit at the time of trial. Accordingly, even if one might describe this verdict as modest, to so characterize it is merely to indulge in an expression of opinion upon which reasonable persons might differ. In this regard the Court of Appeals has taken note of the following explanation of jury verdicts:

> In the absence of more elaborate and explanatory guidelines for the jury in the somewhat elusive area of pain and suffering, we must expect substantial disparities among juries as to what constitutes adequate compensation for certain types of pain and suffering. This is a litigious fact of life of which counsel, clients and insurance carriers are fully aware. Once they place their fate in the hands of a jury, then they should be prepared for the result, whether the award be considered generously high or penuriously low. They cannot expect the Court to extricate them in all cases where the award is higher or lower than hoped for or anticipated. *Mainelli v. Haberstroh*, 237 F.Supp. 190, 194 (M.D.Pa.1964), *aff'd*, 344 F.2d 965 (3d Cir. 1965), cited in *Taken Alive v. Litzau*, 551 F.2d 196, 198 (8th Cir. 1977).

The verdict in this case is well within the realm of the evidence presented at trial and is clearly not inadequate as a matter of law.

---

**5.** At oral argument on the Motion for New Trial plaintiff's counsel stated that he was not arguing that the damage award was against the weight of the evidence.

The Court has considered the other objections raised by plaintiff and finds them to be without merit.

Accordingly, IT IS ORDERED that the Motion for New Trial be denied.